UNITED STATES of America, Plaintiff,

v.

John William POWELL et al., Defendants.

No. 35065.

United States District Court, N. D. California, S. D.

Nov. 1, 1957.

Lloyd H. Burke, U. S. Atty., Robert H. Schnacke, Asst. U. S. Atty., San Fran-

cisco, Cal., Charles R. Renda, Special Atty., Dept. of Justice, Washington, D. C., for plaintiff.

A. L. Wirin, Los Angeles, Cal., Doris Brin Walker, San Francisco, Cal., for defendants John William Powell and another.

Stanley Faulkner, New York City, for defendant Julian Schuman.

GOODMAN, District Judge.

The three defendants are charged in a thirteen-count indictment with engaging in seditious activities intended to adversely affect the armed forces of the United States while the United States was at war in Korea from July 7, 1950 until July 27, 1953.

During the entire period of the Korean War and for several years prior thereto, the defendant John Powell was the owner and editor and the defendants Sylvia Powell and Julian Schuman were staff members of a magazine published in Shanghai, China and known as the Chinese Monthly Review. Count one of the indictment charges the three defendants with conspiring to circulate in the United States through the media of the Chinese Monthly Review false statements and reports intended to interfere with the success of the United States forces in Korea, to cause insubordination and disloyalty among the United States troops, and to obstruct recruitment. Each of counts two through eleven charges the defendant John Powell with circulating in the United States by publication in Chinese Monthly Review false statements intended to interfere with the success of the United States armed forces. Counts twelve and thirteen charge the defendant John Powell with circulating in the United States copies of the Chinese Monthly Review containing statements derogatory to the United States for the purpose of causing insubordination and disloyalty among the members of the military forces of the United States and obstructing recruitment. 18 U.S.C. § 2388.

The false and derogatory statements which the indictment charges that the defendants circulated fall into four principal categories: (1) statements that the United States was the aggressor in the Korean war; (2) statements that the United States was waging bacteriological warfare in Korea and China; (3) statements that the United States was stalling and disrupting peace talks and was deliberately breaching the armistice agreement; and (4) statements relative to the number of United States casualties in Korea.

The false statements charged in the indictment thus center around events in China and Korea. Ever since the indictment was returned on April 25, 1956, the defendants have faced a unique problem in obtaining for use at their trial evidence in their defense which they claim is available to them in China and North Korea.

The United States has never recognized the government of the People's Republic of China which since October 1, 1949 has controlled the Chinese mainland. Since May 1, 1952, the United States Department of State has not issued passports valid for travel to China. The United States does not recognize the People's Government of Korea which controls North Korea. Since October, 1955, the United States Department of State has not issued passports valid for travel to North Korea.

Counsel for defendants have repeatedly sought the assistance of the Court to facilitate counsel's travel to China to gather evidence for the defense. On October 5, 1956, at their request the Court issued an order for the taking of the depositions in China of certain defense witnesses provided a proper showing was made by November 19, 1956 of the particular places and times at which these witnesses would present themselves. On November 16, defendants' counsel advised the Court by affidavit that six defense witnesses would be available to give their depositions at Peking, China during the first half of March, 1957. The government objected to the taking of the depositions in Peking on the ground that government counsel would not have official access to the

Chinese mainland inasmuch as the United States has not recognized the People's Republic of China. The Court then ordered that the depositions of these witnesses be taken in the British Crown Colony of Hong Kong on or before January 15, 1957.

On December 27, 1956 defense counsel moved for an extension of the time fixed for the commencement of the depositions in Hong Kong. They advised the Court that the witnesses had declined to travel to Hong Kong, and that it would be necessary for Mr. A. L. Wirin, one of defendants' counsel, to go to China to attempt to persuade the witnesses to give their depositions in Hong Kong. Mr. Wirin stated that although the United States Department of State had refused to validate his passport for travel to China, he had been informed that the People's Republic of China would grant him a visa without requiring him to present a United States passport. The Court granted an extension of time to February 15, 1957.

On January 24, 1957, defense counsel by affidavit advised the Court that the People's Republic of China had refused to grant Mr. Wirin a visa to enter China unless his United States passport was validated for travel there. They moved the Court to direct the State Department to validate Mr. Wirin's passport for travel to China. At the hearing of the motion on February 1, 1957, they also moved that alternatively the Court dismiss the indictment.

On March, 20, 1957 the Court denied the motion for an order directing the Department of State to validate Mr. Wirin's passport for travel to China on the ground that the Court lacks jurisdiction in this criminal proceeding to make such an order. The Court was of the opinion

that defendants had not yet made a sufficient showing as to the availability of witnesses in China and North Korea and the nature of their expected testimony to enable it to rule on the alternative motion to dismiss the indictment. Consequently the Court ordered the motion continued for 90 days to permit defendants to secure from the prospective witnesses resident in China a statement of their availability to give their depositions and to permit defendants to prepare a reasonably detailed summary of the expected testimony of each witness.[1] Thereafter the motion was further continued to September 2, 1957.

On August 6, 1957, defense counsel moved the Court for an order requesting the appropriate judicial authorities of the People's Republic of China to furnish judicial assistance in taking statements of prospective witnesses resident in China as to their availability to give their depositions at some particular time and place. In an affidavit supporting this motion, defense counsel advised the Court that their contacts in China had informed them that without the request for judical assistance on the part of this Court it would be impossible to obtain the statements of availability contemplated by the order of March 20, 1957. The Government agreed that the relief sought by this motion was appropriate, and on September 3, 1957, the Court issued a formal request for judicial assistance to the Supreme Court of the People's Republic of China. No reply to this request has as yet been forthcoming.[2]

On October 4, 1957, defendants tendered the present plea for dismissal of the indictment by filing a new motion and supporting affidavits. Dismissal is asked on the ground that the Government's refusal to validate Mr. Wirin's passport

1. The court's order of March 20, 1957, sets forth all the steps taken or authorized up to that time to secure the testimony of witnesses for the defense in Red China. It is set forth in full in the Appendix.

2. On November 4, 1957, after this opinion was filed, this Court was advised by the

Ministry of Justice of the People's Republic of China that the request would not be honored, there being no agreement between the government of the United States and the government of the People's Republic of China concerning judicial assistance.

for travel to China and North Korea deprives defendants of an adequate opportunity to prepare their defense by examining witnesses and documents available there and arranging for the presentation of relevant documents and testimony by depositions or at the trial. The motion has been argued and briefed by counsel for defendants and the government. The affidavits that have been filed since last March, when the Court continued the previous motion for dismissal of the indictment, together with the earlier affidavits, in the opinion of the Court, now provide a sufficient record for disposition of the motion.

The record shows that despite the intensive efforts made by counsel for defendants to obtain access to evidence assertedly available in China and North Korea, no substantial progress has been possible. The necessity for defense counsel to travel to China and North Korea in preparation for trial has become manifest.

The indictment puts in issue the truth of the statements allegedly circulated by defendants through the Chinese Monthly Review as well as the intent with which the statements were made. Evidence tending to show that the statements were true or that they were made in good faith in the belief they were true and without criminal intent is obviously essential to the defense. Since defendants resided in China during the period covered by the indictment and for a number of years previously, and since the events which they are charged with falsely reporting occurred in China and Korea, it is evident that China and Korea are the most likely sources of any such evidence.

In their affidavits, defense counsel have now named more than one hundred prospective witnesses resident in China and North Korea. The general nature of the expected testimony of each has been set forth. One group of these witnesses can allegedly give testimony in refutation of the charge that defendants falsely characterized the United States as an aggressor in China and Korea. Some of this group are stated to have observed incidents of direct aggression by United States forces in China. Others, who were formerly officials in the Nationalist Government of China and the Rhee government of South Korea, are claimed to have knowledge of policies and conduct of the United States in China and Korea which can reasonably be termed aggressive. Another group of witnesses assertedly can testify to incidents of the use of bacteriological warfare by the United States in China and Korea in disproof of the charge that the reports made by defendants of such warfare were false. Representatives of the People's Republics of China and North Korea at the peace negotiations in Korea assertedly can give testimony which will aid defendants in meeting the charge that they falsely reported that the United States representatives stalled the negotiations and that the United States forces attempted to disrupt them by deliberate breaches of the armistice agreement. A former officer of the Chinese Volunteer Army in Korea having personal knowledge of the details of the compilation and publication of United States casualty figures is expected to give testimony of value in defense to the charge that defendants circulated false reports of United States casualties in Korea. Testimony of value to the defense is also expected from various newsmen in China and Korea who wrote dispatches during the Korean War on which defendants allegedly relied in publishing reports charged to be false. Twenty-one prominent citizens of China who were acquainted with defendants during the years they resided in China assertedly can give testimony to prove that defendants lacked the criminal intent charged in the indictment.

The mere statement of the number of these prospective witnesses and the nature of their expected testimony demonstrates the futility of any attempt by defense counsel to prepare for trial by correspondence. It is likewise evident that these prospective witnesses could not be adequately interviewed by a defense representative in China and Korea. To appraise the value of their testimony to

the defense requires an attorney versed in the practice and rules of evidence in United States courts and thoroughly familiar with the charges in the indictment and the general plan of defense. Only defendants' chosen counsel meets these qualifications.

The motion for dismissal poses a unique problem—one certainly of first impression.

 The record discloses that attorney Wirin has been denied passport clearance to Communist China and Korea by the State Department. The record also shows that if Wirin's passport is validated for travel there, he can enter Communist China and Korea and proceed to pursue his duties there as defense counsel. As stated in the order of March 20th, the policy of the State Department as to the issuance of passports to Red China and Korea is not subject to judicial review, in this proceeding at least. Nor *can* we judicially or *do* we question the wisdom of that policy, which well may be in the best interests of the people and government of the United States.

In this case and in resolving this motion, we are concerned only with the problem whether the defendants are deprived of their constitutional rights of due process and of fair trial by the acts of the United States which prevent counsel from gathering evidence for their defense in the Chinese mainland and North Korea.

The difficulties and indeed the impossibility of examining witnesses and appraising their worth, other than by going to China and Korea, is shown in the affidavits and is self-evident.

The Constitution (Amendments V and VI) grants the right to defendants in a criminal case to have compulsory process to summon witnesses, and to counsel to aid in their defense, and to due process.

Under the issues made by the indictment and the defendants' plea of not guilty, if there were diplomatic relations between the United States and China-North Korea, to proceed with the trial without permitting Defense Counsel to interview and summon witnesses abroad, would clearly violate the constitutional provisions.[3]

The unique problem tendered is whether it is any less a deprivation of constitutional rights under the circumstances of this case.

The United States has commenced and is prosecuting this criminal proceeding against the defendants. The indictment charges in many counts, false statements made and circulated by defendants with intent to hinder and obstruct the armed forces of the United States. The defendants have the constitutional right to present evidence that the statements alleged to have been made and circulated were not false and not published or circulated with criminal intent. This evidence lies abroad in Red China and North Korea.

They can, at least, have the opportunity to try to obtain this evidence, if the United States issues a passport to attorney Wirin valid for travel to and in Red China and North Korea. Without it, the rights granted by the Constitution become meaningless.

So the United States has its choice. It can choose to adhere to its policy of non-issuance of such passports. Or it can decide that it is more important to prosecute this criminal case. If the former be its choice, it will mean a discontinuance of the present prosecution.

The Government has cited United States v. Von Clemm, 2 Cir., 1943, 136

3. Federal Courts have been consistently alert to safeguard this constitutional right of litigants with respect to obtaining witnesses and documentary evidence. For example, see—Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503; United States v. Beekman, 2 Cir., 1946, 155 F.2d 580; United States v. Grayson, 2 Cir., 1948, 166 F.2d 863; Kiyoshi Kawaguchi v. Acheson, 9 Cir., 1950, 184 F.2d 310; United States v. Coplon, 2 Cir., 1950, 185 F.2d 629; Delaney v. United States, 1 Cir., 1952, 199 F.2d 107, 39 A.L.R.2d 1300; United States ex rel. Schlueter v. Watkins, D.C.S.C.N.Y.1946, 67 F.Supp. 556.

F.2d 968 wherein the prosecution of a criminal case to trial was permitted, even though the procurement of material defense evidence abroad was impossible. But that case is not apropos. For there it was not within the power of the United States to make possible the obtaining of foreign evidence. The opposite is the case here.

But the cause should not be dismissed without a final opportunity for the United States to decide its course.

Hence the following order:

Ordered: Unless the United States validates the passport of attorney Wirin for travel to and in China and North Korea within thirty days from date, the indictment will be dismissed.

The Order setting the cause for trial on December 2, 1957 is vacated. In the event the United States elects to validate Mr. Wirin's passport, the cause, on appropriate motion and notice may be reset for trial.

### APPENDIX

Memorandum and Order for Continuance of Motion.

GOODMAN, District Judge.

On April 25, 1956 a thirteen count indictment was returned against the defendants John William Powell, Sylvia Campbell Powell, his wife, and Julian Schuman. Counts two through eleven charged that while the United States was at war with the People's Democratic Republic of Korea and the Chinese People's Volunteer Army from 1950 until 1953, the defendants with intent to interfere with the operations and success of the armed forces of the United States, wilfully made false reports of the casualties among the United States forces and false statements that the United States was stalling and attempting to disrupt truce talks and peace negotiations, that the United States had breached the Armistice Agreement, and that the United States had engaged in bacteriological warfare in Korea and China.

On September 5, 1956, the Powells moved for an order authorizing the taking of the depositions abroad, at the expense of the United States,[1] of Dr. Joseph Needham of Cambridge, England, Prof. Samuel B. Pessoa of Sao Paulo, Brazil, and Dr. Andrea Andreen of Stockholm, Sweden. By affidavit, the Powells alleged that these three persons had been members of "The International Scientific Commission for the Investigation of the Facts Concerning Bacterial Warfare in Korea and China" and would testify to the conduct of germ warfare by United States personnel participating in the United Nations' police action in Korea.

As well, the Powells requested an order that the United States pay the expenses of their counsel in interviewing certain persons in China and North Korea, and in the event such persons were unable to come to the United States and testify at the trial, pay the cost of taking their depositions in China and Korea. The persons named were: (1) More than 200 residents of China and North Korea listed in the Report of the "International Scientific Commission for the Investigation of the Facts Concerning Bacterial Warfare in Korea and China" as witnesses to the conduct of germ warfare by the United States in Korea and China who would testify as to their observations of instances of such warfare; (2) Unidentified Officers of the army and officials of the government of the People's Republic of Korea and officers of the Chinese People's Volunteer Army who would testify to the number of United States casualties during the United Nations police action in Korea, to the facts of the course of peace negotiations, to breaches of the armistice agreement by the United States personnel, and to the use of germ warfare by the United States; (3) Other unidentified persons resident in China or Korea, who might have knowledge of and would testify to the truth of the statements

---

1. Rule 15, Federal Rules of Criminal Procedure, 18 U.S.C.

of defendants which are asserted in the indictment to be false.

In their affidavit filed in support of their motion, the Powells alleged that their counsel had endeavored to locate and determine the availability of witnesses residing in China and Korea by: (1) Mailing on July 12 and July 25, 1956, letters addressed to Tang Ming-Chao, Peking, China, an officer of the Chinese People's Committee for World Peace, an organization which had assisted the "International Scientific Commission for the Investigation of the Facts Concerning Bacterial Warfare in Korea and China." These letters requested Tang Ming-Chao to contact prospective witnesses in China and determine their availability; (2) mailing on July 12, 1956, of a letter to the Minister of Defense of the People's Republic of Korea, Pyongyang, Korea, requesting his assistance in determining the availability of witnesses resident in Korea. No reply was received to the letter mailed to the Minister of Defense. On September 4, 1956 the Powells' counsel received a cable from Tang Ming-Chao stating that their letters of July 12 and July 25 had been received and the questions raised therein were being considered.

On September 17 and September 20, 1956, the Government filed memoranda in opposition to the Powells' motion.

On September 20, 1956, the Powells filed supplemental affidavits in support of their motion. One affidavit alleged that the affiant John Powell had reason to believe that 38 named witnesses would be available to testify by way of deposition in Peking, China. The substance of the expected testimony of these witnesses is set forth in the affidavit. The second affidavit alleged that the Powells' counsel had attempted to telephone Tang Ming-Chao at Peking, China on September 16 but were informed there was no telephone service from the United States to that city. Consequently, on September 17 counsel cabled Tang Ming-Chao to advise them of the names and addresses of witnesses willing to testify on behalf of the Powells and whether such witnesses were willing to come to the United States or to give their depositions in Peking. On September 19, counsel cabled Tang Ming-Chao to telephone them. No reply had been received to the two cables by September 20. The affidavit also alleged that on July 12, 1956 a letter had been mailed to the "Editor in Chief, Hsinhua (New China News Agency)," Peking, China requesting him to testify at the trial, but no reply had been received.

A hearing was had on the Powells' motion on September 21, 1956 and the matter was continued for further hearing to October 5th, 1956.

On October 2, 1956, Doris Walker, one of the Powells' attorneys, filed an affidavit stating that, following the hearing on September 21, she had cabled Tang Ming-Chao informing him that the Court would authorize the taking of depositions abroad if assured of the witnesses' availability. On September 22, Tang Ming-Chao replied by cable that he could provide the witnesses, but that it was not possible for them to come to the United States. On September 24, counsel cabled Tang Ming-Chao requesting that he supply the names and a summary of the expected testimony of the available witnesses. In addition, on September 26, Mrs. Walker mailed Tang Ming-Chao a letter explaining in detail the nature of the testimony needed and the importance of obtaining definite assurance of the availability of witnesses. On September 29, a cable was received from Tang Ming-Chao listing the names of 50 persons available to testify to the conduct of germ warfare by the United States. The cable stated that 11 would testify that they "saw or heard planes," 14 that they "found objects dropped such as containers, germ laden flies, mosquitoes, spiders, feathers," 12 that they "identified disease transmitting agents," 11 that they had "participated in bacteriological examination and diagnosis," and 2 would "give a general account of American germ warfare." Six of the 50 persons named in this cable had been listed in John Powell's affidavit of Sep-

tember 20 as witnesses he had reason to believe would be available to testify by way of deposition in Peking, China. On October 2, 1956, counsel wrote Tang Ming-Chao inquiring whether the witnesses referred to in his cable as being able to testify that they "saw or heard planes" could identify the nationality of the planes.

At the hearing of the motion on October 5, 1956, the Powells filed a list of 15 persons entitled "Witnesses Resident in China who are Ready, Willing and Able to Testify by Deposition." These 15 persons were among the 50 available witnesses named in the Tang Ming-Chao cable received on September 29th. Five of them were persons who the cable stated would testify that they saw or heard a plane; one a person who it stated would testify he had found a container or germ-laden insects; and the remainder persons who it stated had participated in bacteriological examination and diagnosis. The Court thereupon issued an order that the deposition of these 15 persons be taken in China, before a representative of the British embassy, or such other person as the parties might select provided that the depositions of the 9 persons who had merely participated in bacteriological examination and diagnosis should not be taken unless the 6 eye-witnesses were also available. The order further required that on or before November 19, 1956 the defendants should make a proper showing of the particular places and times at which such persons would present themselves to give their depositions. The order then specified that upon a finding that these provisions had been complied with and that the defendants could not bear the expense of such depositions, the cost of taking the depositions should be borne by the Government.

On November 9, 1956, counsel for the Powells filed an affidavit alleging that on November 7, 1956 a cable had been received from Tang Ming-Chao stating that the persons named in the court's order of October 5 had agreed to give their depositions and that the six eye-witnesses agreed to give their depositions in Peking about the first half of March. The cable further stated that confirming letters from these persons would be obtained and that a definite time for taking the depositions of the nine other persons named in the Court's order was being arranged.

At a hearing on November 16, the Powells offered this affidavit as the showing required by the Court's order of October 5. After submitting evidence of their financial status, they requested an order authorizing the taking of depositions of witnesses in Peking during the first half of March at Government expense. The Government opposed this request, asserting that United States representatives would not have official access to the mainland of China inasmuch as the United States had not recognized the Government of the People's Republic of China. Accordingly, the Court orally ruled that the depositions of the persons named in the order of October 5 be taken at Government expense in the British Crown Colony of Hong Kong on or before January 15, 1957. The Court made a formal written order to that effect on November 27, 1956.[2]

On December 27, 1956 the Powells moved the Court to modify the order of November 27, to extend the time for the commencement of the taking of the depositions to February 15, 1957. In support of the motion, their counsel filed an affidavit stating that after the Court had made the order for the taking of the depositions in Hong Kong, they had cabled Tang Ming-Chao requesting his assistance in arranging for the witnesses to testify in Hong Kong and in obtaining a visa for Mr. A. L. Wirin, one of the Powell attorneys, to enter China so that he might participate in such arrange-

2. Fifteen individuals were named in the Court's order of October 5. It was subsequently determined that two of these individuals having the same name were one and the same person. Accordingly, only fourteen names appear in the Court's order of November 27.

ments. On December 3, 1956, Tang Ming-Chao replied that the Chinese witnesses were unwilling to go to Hong Kong, but that a visa would be issued to Mr. Wirin. In the meantime Mr. Wirin had applied to the United States State Department for validation of his United States Passport for entry into China. On December 13, 1956 he was notified by wire by the State Department that his request was denied. In a letter received on December 21, the State Department explained that no passports were being validated for travel to China because of the present state of relations between the United States and the People's Government of China. Thereafter Mr. Wirin filed an action in the United States District Court for the District of Columbia to compel the validation of his passport for travel to China.

At the hearing of the motion for modification on January 4, 1957, Mr. Wirin advised the Court that since it appeared necessary for him to travel to China to attempt to persuade the Chinese witnesses to give their depositions in Hong Kong, an extension of time for the taking of the depositions was desired in order that he might first pursue the action in the District of Columbia to force validation of his passport. The Court declined to continue the taking of the depositions to await the outcome of the District of Columbia action, but issued an order authorizing Mr. Wirin to enter China, as an officer of the court to arrange for the taking of depositions in Hong Kong, provided he did so without making use of his United States passport. The order further extended the time for the commencement of the taking of the depositions to February 15, 1957.

On January 24, 1957, the Powells filed the present motion for the further assistance of the Court in facilitating the taking of the depositions of the Chinese witnesses. In support of the motion, counsel, Doris Walker, filed an affidavit that on January 15, 1957, Tang Ming-Chao had cabled that it would be necessary for Mr. Wirin to have a United States passport valid for travel to China in order to secure a visa to enter China. The relief requested in the written motion for further assistance was that the Court direct that Mr. Wirin's passport be validated for travel to China. At the hearing of the motion on February 1, 1957, counsel for the Powells also moved that alternatively the Court dismiss the indictment. At the close of the hearing the motion was ordered submitted upon the filing of written memoranda, which have since been filed. The Powells also filed on February 20, 1957 a supplemental affidavit in support of their motion stating that, in addition to the testimony of witnesses previously referred to, they desire to obtain the testimony in respect to matters mentioned in the indictment, of Chou En-lai, Foreign Minister of the People's Republic of China; Kim Il Sung, President of North Korea; Nam Il, Chief of the Peace Negotiation Team for North Korea; Col. Chang Chung San, Chairman of the Peace Negotiation Team for China; T. C. Tu, the General Secretary and Y. T. Wu, a member of the National Committee of the Chinese YMCA; Cora Teng, member of the National Committee of the Chinese YWCA; Rev. K. H. Ting, Dean Nanking University Theological Seminary; P. C. Cho, lay Buddhist Leader in China; T. C. Chao, former President World Council of Churches; Allan Winnington, Wilfred Burchett, Chu Chu-ping, and Wei Wei, newsmen resident in China; certain unidentified newsmen employed by Hsinhua, the New China News Agency; and Ling Liang, Gladys Taylor Young, and Rewi Alley, persons identified only by name.

█ In the opinion of the Court, it has no power to interfere with the foreign policy of the United States as formulated by the Executive Branch of the Government by directing the State Department to validate the passport of Mr. Wirin for travel to Communist China. But, the Court has the power and indeed the duty to control the course of the prosecution of this action so that the defendants may be assured of a fair

trial. If it appeared that the Government has adopted policies which will deprive the defendants of an adequate opportunity to prepare and present their defense to the charges in the indictment, dismissal of the indictment would be proper.

As the record now stands, the Powells have alleged by way of affidavit that adequate preparation of their defense will necessitate the taking of the depositions of hundreds of witnesses in China and Korea. Many of such witnesses have not been identified even by name. There has been only the indirect assurance of an officer of a non-governmental Chinese organization that six named individuals have agreed to give their depositions in Peking the first half of March and that some 44 other named individuals will be available to give their depositions at an, as yet undetermined, time and place. No direct assurance from these persons, themselves, have been tendered to the Court, although it has been stated that such assurance would be forthcoming. The nature of the expected testimony of these persons has been presented to the Court only in the most general and sketchy manner.

Although the Court has accepted the showing thus far made as adequate for an order authorizing the taking of the depositions of 14 of the prospective witnesses at Government expense, it is wholly inadequate as a basis for the relief now requested by defendants. There is no present basis for conditioning the continuance of the prosecution of the cause upon the authorization by the Government of an investigative expedition by defense counsel into Communist China. Only the direct assurance from the alleged defense witnesses of their availability to give their depositions at a particular time and place will suffice to place the Court in a position to rule on the propriety of defendants' alternative motion for dismissal of the indictment. As well, their expected testimony must be severally set forth in sufficient detail to provide the United States Attorney with an opportunity to stipulate,

if he so wishes, that they would so testify.

Accordingly, the Court will continue the present motion for ninety (90) days to afford the defendants an opportunity to make such an additional showing.

So ordered.