Perry **HAWKINS**

v.

Carl **ROBINSON, Warden, Connecticut Correctional Institution.**

**Civ. No. 15700.**

United States District Court,
D. Connecticut.

Nov. 21, 1973.

---

* Omitted for purposes of publication.

John L. Hayes, Hartford, Conn., for plaintiff.

Arlen Nickowitz, Asst. State's Atty., Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, Chief Judge.

Petitioner is presently incarcerated in the Connecticut Correctional Institution at Somers where he is serving a sentence of seven to ten years pursuant to a judgment of conviction in Fairfield County Superior Court for unlawful sale of heroin (then §§ 8 and 36(a) of Public Acts 1967, No. 555, now Conn.Gen.Stats. §§ 19–452 and 19–480(a), as amended).

## I. FACTS

The following facts are not in dispute. At his trial on February 13, 1969, petitioner was identified by Francisco Guzman, an agent of the Bureau of Narcotics and Dangerous Drugs, as the man who sold him two glassine envelopes of heroin on June 7, 1968, while he was parked behind the Midway Diner in Stamford. Guzman, who was not a resident of the area and had never seen petitioner before, based his identification on two encounters with the seller during a fifteen minute period, one lasting a "couple of moments" and the other

"roughly about a minute more or less." (Tr., p. 7). During the first encounter, Guzman asked to purchase two bags of heroin. During the second and more critical episode the seller stuck both his hands inside Guzman's car window, opened his left hand to reveal two glassine envelopes containing a quantity of white powder, took the $12 which Guzman offered, and handed Guzman the envelopes. (Tr., pp. 3–4).

The only other witness who testified about the sale was Detective Edward McNulty of the Stamford Police Department, who stated that he was in a car approximately one hundred yards away when the seller first spoke to Agent Guzman, and that he witnessed the sale from a distance of some forty yards. At that time an automobile was parked between him and Guzman's car. (Tr., p. 15). When Detective McNulty was then asked whether Guzman was with anyone, he answered, "With an informant." Defense counsel then asked for the informant's name, the state's attorney objected, and the objection was sustained by the trial judge. (Tr., pp. 16–17).

Petitioner presented an alibi defense, introducing testimony and exhibits tending to show that he was in Elizabeth, New Jersey, on the day of the sale.

On appeal, petitioner attempted to argue that the trial judge's ruling upholding the prosecutor's objection to disclosure of the informant's name was erroneous. He relied heavily on Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the United States Supreme Court held that "the fundamental requirements of fairness" require that an informant's identity must be disclosed when such disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," *id.* at

60–61, 77 S.Ct. at 628, and that failure of the trial judge to order such disclosure upon request of the defendant at his trial is reversible error. However, the Connecticut Supreme Court refused to entertain the petitioner's claim of error, stating that no constitutional issue was before it, because petitioner's trial counsel had not objected in the manner established by § 226 of the Connecticut Practice Book.[1] State v. Hawkins, 162 Conn. 514, 294 A.2d 584 (1972), cert. denied 409 U.S. 984, 93 S.Ct. 332, 34 L. Ed.2d 249.

Petitioner now seeks a writ of habeas corpus in this court, asserting that as a matter of due process of law he was entitled to the name of the informant. Before deciding that question, however, it is necessary to consider whether petitioner has properly exhausted his state court remedies, as required by 28 U.S.C. § 2254(b).

## II. EXHAUSTION OF STATE REMEDIES

The Judicial Code, 28 U.S.C. § 2254(b), requires that a state prisoner seeking a federal writ of habeas corpus must first demonstrate that he "has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

Petitioner's appeal brief for the Connecticut Supreme Court indicates that he squarely raised the issue of nondisclosure of the informant's identity: indeed, it was the only issue he raised on appeal. "Since the petitioner raised this issue on direct appeal, no further state court proceedings were necessary for him to exhaust his state remedies,

[1]. Section 226 of the Connecticut Practice Book provides:

"Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

and the case is now ready for federal court action." United States ex rel. West v. LaVallee, 335 F.2d 230, 231 (2d Cir. 1964).[2]

2. Petitioner was not required, as a matter of federal law, to seek state habeas corpus before applying to this Court for a federal writ. "Under the traditional concepts of exhaustion only one opportunity through proper channels need be afforded a state to pass upon a question before the habeas court should look to the merits." United States ex rel. Weinstein v. Fay, 333 F.2d 815, 819 (2d Cir. 1964). The contention that federal habeas corpus provisions prohibit a federal court from entertaining a petition until the prisoner has twice wound his way through the state courts—once on direct appeal, and again through any available state habeas corpus proceeding—was expressly rejected by the United States Supreme Court in Brown v. Allen, 344 U.S. 443, 448 n. 3, 73 S. Ct. 397, 97 L.Ed.2d 469 (1953). See also, Roberts v. LaVallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). In Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971), the Court recently summarized the applicable legal principles:

"Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus. The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837, 868 (1963). Petitioners are not required to file 'repetitious applications' in the state courts. Brown v. Allen, 344 U.S. 443, 449 n. 3, 73 S.Ct. 397, 403, 97 L.Ed. 469, 484 (1953). Nor does the mere possibility of success in additional proceedings bar federal relief. Roberts v. LaVallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 196–197, 19 L.Ed.2d 41, 43, 44 (1967) ; Coleman v. Maxwell, 351 F.2d 285, 286 (CA 6 1965)."

"It is the legal issues that are to be exhausted, not the petitioner." Park v. Thompson, 356 F.Supp. 783, 788 (D.Haw.1973).

Moreover, it is evident that the courts of the state of Connecticut are now effectively closed to petitioner's claims. As a general rule, the rejection by the Connecticut Supreme Court of petitioner's claim prevents him from raising it anew in a state habeas proceeding because of Connecticut's rule that habeas corpus cannot serve as an appeal for questions which might have been raised for direct review. Wojculewicz v. Cummings, 143 Conn. 624, 628, 124 A.2d 886 (1956). The rule is relaxed for prisoners presenting federal constitutional claims in the Connecticut courts:

"We hold, therefore, that a petitioner may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly to us if he alleges and proves, by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal." Vena v. Warden, 154 Conn. 363, 366–367, 225 A. 2d 802, 804 (1966).

The *Vena* doctrine is of no avail to petitioner, however, because in State v. Harris, 159 Conn. 521, 271 A.2d 74 (1970), cert. dismissed 400 U.S. 1019, 91 S.Ct. 578, 27 L.Ed. 2d 630 (1971), the Connecticut Supreme Court construed Roviaro v. United States, *supra*, to be "dealing with federal rules rather than constitutional rights." 159 Conn. at 527, 271 A.2d at 77. While this conclusion will be discussed shortly, it is clear that this ruling by the highest court of the state would be binding on any court to which petitioner might apply for state habeas corpus—and it would therefore be futile for the petitioner to seek a state habeas petition on that ground. Vena v. Warden, *supra.*

Additionally, the Connecticut Supreme Court expressly rejected petitioner's claim on direct appeal because his trial counsel had failed to comply with *procedural* requirements during trial:

"Neither the grounds on which the objection was based nor the grounds on which the question was claimed were stated by counsel as required by Practice Book § 226 . . .

"In addition, the record shows no exception was taken to this ruling on evidence so as to make it a ground of appeal."

162 Conn. at 515–517, 294 A.2d at 585, 586.

Yet it is evident that petitioner's trial counsel had the issue of identification uppermost in his mind during his cross-examination of Agent Guzman and Detective McNulty and that he brought this issue clearly before the trial judge. He questioned Guzman as to the brief period of time in which he had an opportunity to observe the seller (Tr., p. 7) and sought to raise the possibility of confusion in the identification with other persons from whom Guzman had bought drugs on June 7 and during the month. (Tr., p. 8). He questioned McNulty as to the distance from which he had observed the seller and the vehicle obstructing his view of Guzman's car. (Tr., pp. 15–16). Following objection to one of his questions, he expressly stated that he was raising the issue of identification (Tr., p. 8). It was in this context that he sought the name of the informant (Tr.,

 The fact that the Connecticut Supreme Court refused to consider his argument on the merits does not prevent petitioner from applying to this Court for relief. "The state courts need not have decided the merits of the claims raised by the applicant in the state courts in order for him to be considered to have ·exhausted his state court remedies. United States ex rel. Meadows v. State of New York, 426 F.2d 1176, 1179 n. 1 (2d Cir. 1970), cert. denied 401 U.S.

941, 91 S.Ct. 944, 28 L.Ed.2d 222 (1971).[3]

Accordingly, I hold that petitioner has adequately exhausted his state remedies.

## III. THE CONSTITUTIONAL ISSUE

The central question in this case is raised by the Connecticut Supreme Court's interpretation of Roviaro v. United States, *supra*, in State v. Harris, *supra*. The United States Supreme Court in *Roviaro* held that the "funda-

---

p. 17). While the trial counsel might well have been more aggressive in seeking the name of the informer and specifying the reasons therefor, the request was specific and the possible value to petitioner of the informant's testimony sufficiently apparent for the trial judge to be apprised of the significance of the request. When petitioner claims error for denial of disclosure of the identity of the only eyewitness to the crime who was not a law enforcement officer, there is no "trial by ambuscade of the judge." State v. Hawkins, *supra*, 162 Conn. at 518, 294 A.2d at 586. *See* United States v. Russ, 362 F.2d 843, 846 (2d Cir. 1966) (dissenting opinion Smith, Circuit J.), cert. denied 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146. By having thus characterized the matter as hinging on procedure, the court foreclosed state habeas relief, since state habeas corpus "may not be employed to review irregularities or errors of procedure. . . ." Wojculewicz v. Cummings, *supra*, 143 Conn. at 628, 124 A.2d at 889. But labeling a ruling as evidentiary does not inexorably destroy the constitutional attributes inherent in it.

3. The failure of petitioner's trial counsel to comply with the requirements of § 226 of the Practice Book does not bar this Court from granting petitioner relief. "Questions of due process are not to be treated 'narrowly or pedantically, in slavery to forms or phrases.'" Pearson v. McGraw, 308 U.S. 313, 318, 60 S.Ct. 211, 213, 84 L.Ed. 293 (1939). *See* Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In United States ex rel. DeNegris v. Menser, 247 F. Supp. 826 (D.Conn.1965), aff'd 360 F.2d 199, (2d Cir.) this Court was confronted with a habeas corpus petitioner one of whose claims was not considered by the Connecticut Supreme Court on direct appeal because it was raised for the first time in appellant's brief before that court. Our conclusion at that time with respect to exhaustion of state remedies is equally applicable here:

"If this rejection by the state court of the opportunity to pass upon this element of the petitioner's claim because of insistence upon compliance with its procedural rules forecloses him from having it passed upon in Connecticut courts in a post-conviction proceeding, as it probably does because of Connecticut's rule that habeas corpus cannot serve as an appeal for questions which might have been raised for direct review, Wojculewicz v. Cummings, 143 Conn. 624, 628, 124 A.2d 886 (1956); In re Bion, 59 Conn. 372, 386, 20 A. 662 (1890); Brisson v. Warden, 25 Conn.Sup. 202, 205, 200 A.2d 250 (1964), this court may, nonetheless, consider it in this habeas corpus proceeding, cf. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); unless, of course, petitioner's failure to comply constituted a deliberate bypassing of orderly state procedure within the meaning of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Surely, there was no deliberate by-passing here, for an attempt *was made* to have the state Supreme Court pass on this particular facet of his constitutional claim under the same evidence already contained in the record. Such a situation is far outside the qualification of Fay v. Noia."

247 F.Supp. at 829. The Court of Appeals affirmed, noting that *this Court's* "discussion of the point correctly analyzes the controlling cases and the principles involved, and properly applies them to the facts of this case." United States ex rel. DeNegris v. Menser, 360 F.2d 199, 202 (2d Cir. 1966). In Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), as in this case, the accused's counsel failed to comply with a technicality of the state procedural rules. The Supreme Court concluded that "dismissal on the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim. . . ." 379 U.S. at 452, 85 S.Ct. at 570.

mental requirements of fairness" dictate the disclosure of an informant's identity in certain circumstances, 353 U.S. at 60–61, 77 S.Ct. 623, but nowhere in the opinion did the Court explicitly state that such disclosure was required by a specific provision of the Constitution. As noted above, the Connecticut Supreme Court held that *Roviaro* dealt with "federal rules rather than constitutional rights." 159 Conn. at 527, 271 A.2d at 77. It relied upon McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L. Ed.2d 62 (1967), in which the United States Supreme Court discussed its holding in *Roviaro* in connection with the formulation of "evidentiary rules for federal criminal trials." *Id.* at 311, 87 S.Ct. at 1062. An issue crucial to petitioner's case is thus presented: if disclosure of the informant's identity under the circumstances discussed in *Roviaro* is solely a matter of enforcement of "evidentiary rules for federal criminal trials," then the ruling of the trial judge was at best an error on a question of evidence, and the failure of the trial judge to order such disclosure does not rise to the level of a constitutional ground upon which petitioner may apply to this Court for a writ of habeas corpus. 28 U.S.C. § 2254(a). If, on the other hand, the disclosure of the informant's identity required in *Roviaro* and sought at peti-

tioner's trial was dictated by constitutional requirements, then petitioner's constitutional rights may have been violated.[4] Not every evidentiary ruling rises to the magnitude of a constitutional issue. See Wilson v. MacDougall, Civil No. 13,815 (D.Conn. June 19, 1970). And, as in California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L. Ed.2d 489 (1970), the Court's task in this case is not to determine the soundness of a rule of evidence, but rather to ascertain whether an individual's constitutional rights were violated. For courts to determine the applicability of a rule by mere labeling without any examination of the policies dictating the choice of one label rather than another would seem to be unwise. We thus turn to an analysis of the basis for the disclosure requirement.

Beginning with the Supreme Court's opinion in *Roviaro*, it is evident at the outset that the words which the Court used therein—"the fundamental requirements of fairness"—have long connoted a specifically constitutional guarantee. "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941).[5] As Mr. Justice Rehnquist recently noted,

4. The issue of whether disclosure of an informant's identity is solely a matter of evidentiary rules, or may in certain circumstances be constitutionally required, is also central to the determination of whether this Court properly has jurisdiction over petitioner's claim. The Judicial Code, 28 U.S.C. § 2241 (c) provides:
"The writ of habeas corpus shall not extend to a prisoner unless—
(3) he is in custody in violation of the Constitution or laws or treaties of the United States. . . ."
28 U.S.C. § 2254(a) provides:
"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.*"
(emphasis added).

Inasmuch as the question of jurisdiction and petitioner's claim on the merits are intimately bound together, they will be considered conjointly in the following discussion.

5. "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false." Lisenba v. California, *supra*, 314 U.S. at 236, 62 S.Ct. at 290. "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). *See* Lyons v. Oklahoma, 322 U.S. 596, 605, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); Blackburn v. Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Washington v. Texas, 388 U.S. 14, 17–18, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

speaking for the majority in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46, 50 (1973), "[O]ne of the purposes of the Due Process Clause of the Fourteenth Amendment is to insure . . . 'essential demands of fairness.'"

Few courts which have applied the *Roviaro* holding have expressed opinions as to whether the foundation for the requirement of disclosure at trial may be found in the requirements of the Constitution or in the power of the Supreme Court to prescribe evidentiary rules for the lower federal courts. In this circuit, for example, after *Roviaro* was announced, the disclosure requirement was often acknowledged but seldom subjected to close analysis.[6] In United States v. D'Angiolillo, 340 F.2d 453, 455 (2d Cir. 1965), cert. denied 380 U.S. 955, 85 S.Ct. 1090, 13 L.Ed.2d 972, Chief Judge Lumbard in reasoned dictum summarized the case law and actually expanded on the requirements of *Roviaro* in stating the governing rule for this circuit:

> "The rule emerging from these and earlier decisions is that, where the informer's testimony may be relevant to the defense, the defendant is entitled to his name, to such information as the government may have concerning his whereabouts, and to reasonable cooperation in securing his appearance." (footnote omitted). 340 F.2d at 455.

It is evident, also, that other federal courts have assumed that the requirement of disclosure in particular circumstances is rooted in the constitutional guarantee of a "fundamentally fair" trial. See Burwell v. Teets, 245 F.2d 154, 165 (9th Cir. 1957), cert. denied 355 U.S. 896, 78 S.Ct. 271, 2 L.Ed.2d 194, reh'g denied 355 U.S. 928, 78 S.Ct. 385, 2 L.Ed.2d 358 (1958); United States v. Emory, 468 F.2d 1017, 1020–1021 (8th Cir. 1972); United States v. Powell, 156 F.Supp. 526, 530 n. 3 (N.D. Cal.1957); United States v. Barbera, 213 F.Supp. 923, 926–927 (S.D.N.Y. 1963). Moreover, *Roviaro* has at least twice been used as foundation for the granting of a writ of habeas corpus for a state prisoner, further affirming that the case involves constitutional guarantees and not merely federal evidentiary rules. United States ex rel. Drew v. Myers, 327 F.2d 174, 180–181 (3rd Cir. 1964), cert. denied 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52; Hernandez v. Nelson, 298 F.Supp. 682, 685–687 (N.D.Cal. 1968), aff'd 411 F.2d 619 (9th Cir. 1969).

In addition, the circumstances in *Roviaro* demonstrate that interests of a constitutional magnitude were at issue in that case. In *Roviaro*, two federal narcotics agents and two Chicago police officers worked with an informant described only as "John Doe." One of the officers, Bryson, hid in the trunk of Doe's car while Doe drove to a Chicago location to make a purchase of heroin. The others followed in separate cars. After an hour's wait, Roviaro arrived and immediately sat down in the front seat of Doe's car beside Doe. They proceeded to a second location, still followed by the law enforcement officers. When Doe's car stopped at the second location, one of the federal agents, Durham, saw Roviaro alight from the car, walk to a nearby tree, pick up a small package, return to the car and make a motion as if depositing the package, then wave to Doe and walk away. Durham immedi-

---

6. *See, e. g.*, United States v. White, 324 F.2d 814, 816 (2d Cir. 1963); United States v. Cimino, 321 F.2d 509, 512 (2d Cir. 1963), cert. denied, D'Ercole v. United States, 375 U.S. 967, 974, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); United States v. Holiday, 319 F.2d 775 (2d Cir. 1963). *But see* United States ex rel. Coffey v. Fay, 344 F.2d 625, 631, 631 n. 4 (2d Cir. 1965), rev'g 234 F.Supp. 543 (S.D.N.Y.1964), on remand 242 F.Supp. 382 (S.D.N.Y.1965), aff'd 356 F.2d 460 (2d Cir. 1966), cert. denied 386 U.S. 1014, 87 S.Ct. 1350, 18 L.Ed.2d 450 (1967). In *Coffey* the issue was explored, but arose in the context of a hearing to determine whether probable cause existed for an arrest rather than the ultimate determination of guilt or innocence at trial, and therefore was not resolved by the Court of Appeals.

ately went to Doe's car and seized the package, then signaled Bryson to come out of the trunk. Bryson reported that while secreted in the trunk he had heard Roviaro direct Doe where to drive and when to pull over in order to lose a "tail." He told Doe that he had brought "three pieces this time." When Bryson heard Roviaro order Doe to stop, he had lifted the lid of the trunk and observed Roviaro walking to the tree, picking up the package, and returning to the car. He then heard Roviaro say, "Here it is," and "I'll call you in a couple of days." The package contained three glassine envelopes containing a white powder, which chemical analysis revealed contained heroin. 353 U.S. at 56–58, 77 S. Ct. 623, 626.

Both in a pre-trial motion and during cross-examination at trial Roviaro's counsel sought to learn the identity of the informant. His motion was denied and objections to the cross-examination were sustained. *Id.* at 55–56, 77 S.Ct. 623.

Count 2 of the indictment against Roviaro charged that he did "fraudulently and knowingly receive, conceal, buy and facilitate the transportation and concealment after importation of . . . heroin, knowing the same to be imported into the United States contrary to law . . . ." *Id.* at 63, 77 S.Ct. at 629. The Supreme Court noted that, considering the crime charged, identification of the informant may have been crucial to the preparation and conduct of Roviaro's defense in several ways. First, Roviaro believed that "he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless [Roviaro] waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness." *Id.* at 64, 77 S.Ct. at 629. Second, Doe might have enabled Roviaro to establish a defense: "Doe

had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment." *Id.* Alternatively, he "might have thrown doubt upon petitioner's identity or on the identity of the package." *Id.* Moreover, Doe's testimony may have cast doubt on the existence of a critical element of the crime: "He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car." *Id.* Finally, the Court noted,

> "the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have tended to show an entrapment." *Id.*

■■ It is thus manifest that the Court was not concerned merely with the formulation of a rule of evidence: at stake was the basic fairness of the proceedings in which Roviaro had been convicted.[7] And the denial of basic fairness in criminal proceedings is a "violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). Lisenba v. California, *supra*; In re Murchison, *supra*.

Yet it is equally manifest that the Court was concerned that wholesale requirements of disclosure of informants' identities would jeopardize effective and necessary law enforcement techniques:

> "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with

---

7. Where the very integrity of the fact-finding process is at issue, *i. e.*, in the presentation or exclusion of evidence directly relating to the accused's innocence or guilt at trial, the Supreme Court has determined the accused's "fundamental" rights to be of constitutional origin. *See* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

enforcement of that law. . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." 353 U.S. at 59, 77 S.Ct. at 627.

The Court thus rejected a blanket rule requiring disclosure of an informant's identity whenever a defendant requested it. Such a rule was not constitutionally required because in many situations nondisclosure of the informant's identity would in no way affect the "fundamental fairness" of the accused's trial.[8] Nor was such a rule desirable as an evidentiary rule since it would clearly hinder law enforcement officials in their efforts to obtain information from informants. The Court thus recognized that only *in certain circumstances* may disclosure be required, and proceeded to articulate the primary factors to be considered in determining whether such circumstances are present in any particular case:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629.

Considering these factors, the Court held that Roviaro's constitutional right to a fair trial had been violated.

In light of this analysis there is no contradiction, actual or implied, between the Court's holdings in *Roviaro* and in McCray v. Illinois, *supra*. In *McCray* petitioner asked the court to hold that the identity of an informant must be disclosed *at a preliminary hearing to determine whether probable cause existed* for an arrest and incidental search of an accused. The Court refused to lay down such a blanket rule, just as it had refused to lay down any such broadsword approach in *Roviaro*. While fundamental fairness might require disclosure of an informant's identity at trial under certain circumstances, it clearly did not require such disclosure to *all* defendants upon request. Nor would the Court blithely strike the "informer's privilege" from the law of evidence:

"In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need *always* be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search. Yet we are now asked to hold that the Constitution somehow compels Illinois to abolish the informer's privilege from its law of evidence, and to require disclosure of the informer's identity *in every such preliminary hearing* where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust." (emphasis added). 386 U.S. at 312, 87 S.Ct. at 1063.

*In McCray*, the Court was even less impelled by considerations of "fundamental fairness" to impose an absolute rule of disclosure than in *Roviaro* because ultimate questions of guilt or innocence are not at issue in the preliminary proceeding. And if an evidentiary rule of disclosure would not be imposed at trial, it certainly would not be imposed at a preliminary hearing:

"What *Roviaro* thus makes clear is that this Court was unwilling to impose any *absolute* rule requiring dis-

---

8. See, e. g., Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

closure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of *compulsory* disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." (emphasis added). 386 U.S. at 311, 87 S.Ct. at 1062.

This is not the first time the Court has distinguished between procedures bearing upon the determination of guilt and those dealing with other phases of the criminal process. See Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L. Ed. 1337 (1949).

■ Thus as the law comes down to us now, disclosure of an informant's identity is not required at a preliminary hearing to determine probable cause,[9] and it is mandatory at trial only when the crime charged, the possible defenses, and the possible significance of the informer's testimony are such that the "fundamental requirements of fairness" so require. Roviaro v. United States, *supra*. Of course this analysis in no way enlarges upon the doctrine articulated in *Roviaro*, but only reaffirms the Court's determination to protect the right of the accused to basic fairness in the determination of his guilt or innocence. We need not indulge in semantic gymnastics or turn conceptual somersaults over the fact that the Supreme Court did not specifically denote the Due Process Clause as the basis for its decision in *Roviaro*: it is beyond peradventure that the right to a trial in which the "fundamental requirements of fairness" are secured is a right essential to, and at the very heart of, the protections guaranteed by our Constitution. Even where what was at stake was only the degree of punishment rather than the fundamental issue of guilt or innocence, the Supreme Court held that suppression by the prosecution of evidence favorable to the accused upon request violates constitutional guarantees where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution:

> "The principle of Mooney v. Holohan [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)] is not punishment of society for misdeeds of a prosecutor but *avoidance of an unfair trial to the accused.* Society wins not only when the guilty are convicted but *when criminal trials are fair*; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.' A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile,' to use the words of the Court of Appeals. 226 Md., 422, at 427, 174 A.2d 167."

Brady v. Maryland, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). (emphasis added). See Fay v.

---

9. This is the teaching of *McCray*, as noted by our Court of Appeals:
 "There is no absolute constitutional right to disclosure of the identity of an informer at every hearing on a motion to suppress. See, e. g., McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) [footnote omitted]."
 United States v. Tucker, 380 F.2d 206, 211 (2d Cir. 1967).

 Moreover, it is significant that in *McCray* the Court was sharply divided, but the four dissenters felt no need to discuss whether the disclosure requirement · *at trial* was constitutionally based: rather, they argued the much broader position that disclosure of the informant's identity is constitutionally required *at a hearing to determine whether probable cause existed for an arrest or search.* 386 U.S. at 314, 87 S.Ct. 1056.

Noia, 372 U.S. 391, 411, 83 S.Ct. 822, 834, 9 L.Ed.2d 837 (1963): "[W]hatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no doubt that it embraces the fundamental conception of a fair trial . . . ."

Having concluded that the disclosure of an *informant's identity may be* constitutionally required in certain circumstances, it is now necessary to determine whether petitioner's case presents such circumstances.

 Neither *Roviaro* nor the leading case in this circuit, United States v. D'Angiolillo, *supra*, offer specific touchstones for determining when disclosure of the informant's identity is "relevant and helpful to the defense of the accused." A definite rule of thumb, however, has developed: where the informant was a witness or a participant in the alleged crime, disclosure of his identity is required. On the other hand, where the informant was not a participant or witness, *e.g.* where he merely introduced undercover law enforcement officers to a suspected drug dealer but was not involved in any later transactions between the parties, disclosure is not required.[10] Such is the rule in this circuit, United States v. Roberts, 388 F.2d 646, 648–649 (2d Cir. 1968), and, as the Court of Appeals for the District of Columbia noted in United States v. Skeens, 145 U.S. App.D.C. 404, 449 F.2d 1066, 1071 (1971), a similar rule has consistently been followed in other jurisdictions:

"In striking this balance as we do today, we find ourselves in accord with every other federal appellate court, including a panel of this Court in Anderson v. United States, 106 U. S.App.D.C. 340, 273 F.2d 75, cert. denied, 361 U.S. 844, 80 S.Ct. 95, 4 L. Ed.2d 81 (1959), which has had occasion to consider the disclosure problem

since *Roviaro*. The lower federal courts have consistently held that *Roviaro* does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged. *See, e.g.*, Rocha v. United States, 401 F.2d 529 (5th Cir. 1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 796 (1969); Jimenez v. United States, 397 F.2d 271 (5th Cir. 1968); Churder v. United States, 387 F.2d 825, 831–832 (8th Cir. 1968); Lannom v. United States, *supra*, 381 F.2d 858, 861–862 (9 Cir.); Rodriguez-Gonzalez v. United States, 378 F.2d 256, 258–259 (9th Cir. 1967); Garcia v. United States, 373 F.2d 806, 808 (10th Cir. 1967); United States v. Pitt, 382 F.2d 322, 325 (4th Cir. 1967); Zaroogian v. United States, 367 F.2d 959, 962 (1st Cir. 1966); United States v. Russ, *supra*, 362 F.2d 843, at 844–846 (2 Cir.); Garibay-Garcia v. United States, 362 F.2d 509, 510 (9th Cir. 1966); Cook v. United States, 354 F.2d 529, 531 (9th Cir. 1965); Marderosian v. United States, 337 F.2d 759, 760–761 (1st Cir.), cert. denied, 380 U.S. 971, 85 S. Ct. 1328, 14 L.Ed.2d 268 (1964); United States v. Konigsberg, 336 F.2d 844, 848 (3d Cir.), cert. denied, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964); Bruner v. United States, 293 F.2d 621 (5th Cir.), cert. denied, 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961); Miller v. United States, 273 F.2d 279, *supra* at 280–281 (5 Cir.); Pegram v. United States, 267 F.2d 781 (6th Cir. 1959). *Conversely, disclosure has been required where the informant was an active participant or was present at the scene of the crime.* See, e.g., Lopez-Hernandez v. United States, 394 F.2d 820 (9th Cir. 1968); United States v. Roberts, 388 F.2d 646, 648–649 (2d Cir. 1968); Gilmore v. United States, 256 F.2d 565, 566–

---

10. Thus in Rugendorf v. United States, *supra*, the Supreme Court held that disclosure was not required where there was "not even an intimation" that the informant "had played a direct and prominent part, as the sole participant with the accused, in the very offense for which the latter was convicted." *Id.* 376 U.S. at 534, 84 S.Ct. at 829.

567 (5th Cir. 1958)." (emphasis added).

See, also, United States v. Lloyd, 400 F. 2d 414, 416 (6th Cir. 1968); United States v. Waters, 288 F.Supp. 952, 953–954 (D.Mass.1968).

█ At petitioner's trial, Detective McNulty testified that the informant was with Agent Guzman during the transaction for which petitioner was indicted. While possibly not an active participant, the informant was certainly a witness close at hand throughout the entire transaction. This would be sufficient to bring petitioner within *Roviaro*, *D'Angiolillo*, and *Roberts*, *supra*, which collectively establish that it is reversible error for a trial judge to allow a government witness to refuse to disclose an informant's name when the informant is a witness to the alleged crime and the informant's name is requested by the defendant at his trial. *Cf.* United States v. Smart, 448 F.2d 931, 935–936 (2d Cir. 1971), cert. denied 405 U.S. 998, 92 S.Ct. 1269, 31 L.Ed.2d 467 (1972), reh'g denied 406 U.S. 938, 92 S.Ct. 1781, 32 L. Ed.2d 139.

Moreover, the consideration of "the possible defenses" and "the possible significance of the informer's testimony" which *Roviaro* requires demonstrates the unfairness of which petitioner complains. As in *Roviaro*, unless petitioner waived his constitutional right not to take the stand in his own defense, the informant was his sole material witness, the only eyewitness to the crime who was not a law enforcement officer. In addition, petitioner maintained that he was in New Jersey on the day of the alleged crime and presented evidence tending to support his alibi. Identification of the man who dropped the packages into Agent Guzman's car on June 7, 1968, was thus a crucial aspect of the proceedings at petitioner's trial, and the informant's testimony would have been "highly relevant" to such identification and "might have been helpful" to petitioner's defense. Roviaro v. United States, *supra*, 353 U.S. at 63–64, 77 S.Ct. 623. The potential significance of the informant's testimony is underscored when it is remembered that Agent Guzman met the seller only during two very brief encounters and that Detective McNulty observed the transaction from forty yards away. By his failure to order disclosure of the eyewitness-informant's identity, the trial judge deprived petitioner of the opportunity to interview the informant or to present the informant's testimony in his own behalf. This violated the "fundamental requirements of fairness" and denied petitioner due process of law.

IT IS ORDERED that a writ of habeas corpus should issue out of this court discharging the petitioner from custody, unless petitioner, Perry Hawkins, is afforded a new trial within sixty days at which the government shall disclose the name of the informant and such information as it has concerning his current whereabouts, and at which the government shall provide reasonable cooperation in securing the appearance of the informant.