STATE OF CONNECTICUT *v.* FRED L. HARRIS, JR.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

522

Argued May 8—decided June 23, 1970

*Catherine G. Roraback,* for the appellant (defendant).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ALCORN, C. J. The defendant was convicted by a jury of possessing, or having under his control, heroin in violation of § 37 (a) of 1967 Public Act No. 555, which, as amended, is now General Statutes § 19-481 (a), and he has appealed from the judgment rendered on the verdict.

From the evidence before them, the jury could have found the following facts: Shortly after 10 o'clock in the evening of October 25, 1967, two detectives of the New Haven police department met an informer in a parking lot near the New Haven railroad station. Following a conversation with the informer, they went to the home of a judge of the Circuit Court shortly after midnight, where they obtained a warrant to search the premises at 129 Carlisle Street in New Haven. They then went with other officers to that address, arriving about 1:40 a.m. on October 26. They were admitted by a man who stated that the defendant was not at home. Upon being told that the officers had a search warrant for the premises, the man ran abruptly toward another part of the house. The officers followed into a bedroom where the defendant and his wife were asleep. The defendant was awakened and was advised that the officers had a search warrant, which they gave to the defendant to read. The defendant read the warrant, arose and got partially dressed. The officers searched the bedroom and found four glassine bags containing heroin secreted in the hollow base of a basketball trophy which had stood on a bureau in the bedroom. The defendant was arrested, advised of his constitutional rights, and taken to police headquarters. On the defendant's right arm were several marks such as are made by the hypodermic injection of drugs, one mark appearing to have been from an injection made within an

hour or two. The basketball trophy in which the heroin was found was one which had been awarded to the defendant as manager of a high school basketball team.

Before trial, the defendant moved for a return of the seized property and its suppression as evidence. The court denied the motion, and the defendant assigns this as error on the ground that the search warrant was illegal because the judge who issued it did not make an independent inquiry as to the probable cause for the issuance of the warrant. The court has made a finding of the subordinate facts and the conclusions which it reached as a result of the hearing on the motion from which it appears that two detectives of the New Haven police department made an affidavit before the Circuit Court judge in which they alleged the following: They are members of the New Haven police department assigned as detectives in the gambling and narcotics division and have participated in numerous investigations and arrests concerning the illegal use and sale of narcotic drugs. They met a confidential informer known to both of them who had in the past given reliable information which had resulted in arrests and convictions in narcotics cases. This informer had personal knowledge that the defendant was using narcotics at his place of abode on the first floor of 129 Carlisle Street, New Haven. The informer had stated that he had been on the premises on numerous occasions and had seen the defendant with heroin in his possession. As a result of reliable information from a reliable informer, an investigation and surveillance of the defendant and his place of abode were conducted. Both the city directory and the telephone directory listed the defendant as residing at 129 Carlisle Street. The detectives had

seen the defendant in the company of specifically named persons who had been arrested for dispensing and using heroin. At the meeting with the informer on October 25, 1967, he had stated that he was at the defendant's home and had seen him in possession of heroin which he was secreting in the area of a dresser in his bedroom. The Circuit Court judge read the affidavit, initialed its various paragraphs, and thereupon issued the search warrant.

The defendant claims, essentially, that his rights under article first, § 7, of the constitution of Connecticut and the fourth amendment to the constitution of the United States were violated because the judge who issued the warrant did not cross-examine the officers concerning the facts which they had submitted to him under oath. The defendant concedes that the affidavit necessary to support the issuance of a warrant may be based not only on the affiant's personal knowledge but upon information furnished by others.

"[T]he essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy . . . is realized . . . by requiring that an impartial magistrate determine from an affidavit showing probable cause whether information possessed by law-enforcement officers justifies the issuance of a search warrant." *Jones* v. *United States,* 357 U.S. 493, 498, 78 S. Ct. 1253, 2 L. Ed. 2d 1514. Here the affidavit which was submitted clearly furnished probable cause provided the judge accepted as credible the sworn statement of the officers who submitted the information. We are aware of no constitutional provision which required the judge to assume that the officers who swore to the affidavit were committing perjury. See *McCray* v. *Illinois,* 386 U.S. 300, 313, 87 S. Ct. 1056,

18 L. Ed. 2d 62. It is quite apparent that the judge considered the information which the affiants had submitted to him to be reliable. That being so, the defendant's claim that the search warrant was invalid is without merit. *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723. "The Fourth Amendment is served if a judicial mind passes upon the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an *ex parte* proceeding. As we have said, the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told." *State* v. *Burnett,* 42 N.J. 377, 388, 201 A.2d 39. In the present case, there was substantial basis for the judge to conclude that heroin was probably present in the premises described, and that is sufficient. *Jones* v. *United States,* 362 U.S. 257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697. Indeed, the defendant makes no claim that any allegation of the affidavit was false or inaccurate. Some substantial basis should be advanced for any attack on a judge's exercise of his discretion in issuing a search warrant. None was advanced here.

The defendant sought in various ways to compel the state to disclose the identity of the confidential informer who had been referred to in the affidavit supporting the search warrant. The identity was sought by a question to one of the detectives in the hearing on the motion which we have just discussed, by a written motion before trial for an order directing the state's attorney to furnish the defendant with the name and address of the confidential informer, by questions asked on cross-examination of witnesses for the state, and by oral motion at the

conclusion of the state's case. The court denied the motions and sustained objections to the questions asked of witnesses. No point is made of the variety of ways in which the information was sought, but error is assigned in the court's action in refusing to require the state to disclose in each instance.

The defendant relies primarily on *Roviaro* v. *United States,* 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639. It should be borne in mind, however, that in that case the court was dealing with federal rules rather than constitutional rights and that even then the United States Supreme Court "was unwilling to impose any absolute rule requiring disclosure of an informer's identity." *McCray* v. *Illinois,* supra, 311. In *Roviaro,* the government was required to disclose the identity of an informer who had participated materially in the commission of the crime with which the accused stood charged. The court concluded (p. 64) that, since the informer was the sole participant with the accused in the transaction charged and was the only witness in a position to amplify or contradict the testimony of government witnesses, and since a government witness had testified that the informer denied knowing the defendant or even having seen him before, the trial court committed error in permitting the government to withhold the identity of the informer.

The general rule, subject to certain specifications and limitations, is that the prosecution is privileged to withhold from an accused the disclosure of the identity of an informer. Note, "Accused's rights to, and prosecution's privilege against, disclosure of identity of informer," 76 A.L.R.2d 262, 271 § 3. Based upon the public policy in furthering and protecting the public interest in effective law enforcement, the Model Code of Evidence adopted by the

American Law Institute states the proposition in this way: "Rule 230. IDENTITY OF INFORMER. A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed, or (b) disclosure of his identity is essential to assure a fair determination of the issues."

The so-called informer's privilege is actually the state's privilege to withhold disclosure of the identity of persons who supply law enforcement officers with information concerning violations of law. The purpose of the privilege is to further and protect the public interest in effective law enforcement. The privilege recognizes a citizen's duty to communicate knowledge of the commission of crime to the proper authorities and that the performance of that duty is encouraged by not disclosing the identity of the informer. *Roviaro* v. *United States,* supra, 59. In commenting on the rule, the court, in *Roviaro,* said (p. 60): "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way", and (p. 62), "[w]e believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondis-

closure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." See also *Rugendorf* v. *United States,* 376 U.S. 528, 534, 84 S. Ct. 825, 11 L. Ed. 2d 887.

In the present case, in contrast to the *Roviaro* case, there is no suggestion that the informer was a participant in the crime with which the defendant was charged. Instead, the defendant indulges in surmises as to what information might be gleaned from an examination of the informer. The defense was simply that the heroin which the officers had found was not the defendant's and that he did not know of its presence. Rather than demonstrating that the informer would be a desirable witness for the defendant, he argues that the informer was a "key witness for the prosecution" because the informer had given the police the original lead to the crime. The defendant argues that without recourse to the informer he had no way of proving his innocence except his own denial of any knowledge of the presence of the narcotics. He surmises that access to the informer could assist in learning how the narcotics came to be in the apartment and in impeaching the informer's statements to the police and possibly the testimony of the police. Only surmise is suggested as to how the informer could supply information concerning the presence of the heroin. The only statements of the informer which could be impeached were those recited by the police in the affidavit supporting the search warrant, and they had served their purpose when the warrant was issued. They had no place in the trial of the case. The testimony of the police officers at the trial was confined to their

activity in the search and the events which followed in which the informer did not participate. The problem of coping with the types of crime which confront law enforcement officers today lends particular emphasis to the purpose of the informer rule—namely, the furtherance and protection of the public interest in effective law enforcement. The court did not abuse its discretion either in denying the motions to compel a disclosure of the identity of the informer or in excluding testimony as to that identity.

In addition to the issues already discussed, the defendant attacks the charge for the court's failure to include certain requests to charge and for its failure to state correctly the applicable law in the charge as given. The defendant also assigns error in the court's denial of a motion to dismiss made by him at the conclusion of the state's case on the ground that a prima facie case had not been established, and in the denial of his motion to strike the testimony of certain witnesses concerning needle marks on the defendant's arm on the ground that the testimony was not relevant to the charge of possession under the statute because possession for the purpose of self-administration is not criminal. All of these assignments of error rest upon the same basic argument. Consequently, the merit of all of them may be determined by considering the single basic premise.

The defendant's thesis is that in order to prove possession of a narcotic drug under the statute, it was incumbent upon the state to prove "the wilful and intentional having of a narcotic drug on one's person or premises with knowledge of the nature of the drug, knowledge of its presence and the power to exercise dominion and control over it"; the possession need not be shown to be exclusive; it may be a

constructive possession rather than an actual physical possession; but possession for the possessor's personal use is not a crime and, consequently, evidence that the alleged possessor is a user of narcotics is not a proper element to consider in determining whether he was in possession and control of the drug.

In support of this thesis, the defendant argues that the state should not have been permitted to show that he used narcotics and that, with that element of the case excluded, no inference that he knew of the presence of the heroin, knew its nature, or had any control over it could be drawn from a mere showing that the heroin was found in the base of his basketball trophy on a bureau in the bedroom which he occupied with his wife in an apartment shared by them with their four children and another adult, none of whom were examined or searched.

Section 37 (a) of 1967 Public Act No. 555 became effective on October 1, 1967. The section, which, as amended, is now § 19-481 (a) of the General Statutes, provides in pertinent part that "[a]ny person who possesses or has under his control any quantity of any narcotic drug, except as authorized" in the statute, shall be punished in the manner provided. There is no claim that the possession or control, if it existed, was one authorized by the statute.

" 'Possess,' as used in criminal statutes, ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character." *State v. Reed,* 34 N.J. 554, 557, 170 A.2d 419; see note, 91 A.L.R.2d 810. The substance involved in the present case clearly was heroin, and there is no claim in the record that the defendant disclaimed any knowledge of that fact. His claim is that he did not know that the heroin was there at all. Consequently,

his knowledge of the character of the substance found by the police was not an issue in the trial. The issue was whether he knew of the presence of the heroin.

The evidence before the jury was that heroin was found secreted in the base of a trophy which belonged to the defendant and which stood on a bureau in his bedroom in the apartment in which he lived with his wife and family and that his arm bore marks indicating that he had administered narcotics to himself, in one instance as recently as within two hours. He testified that he had not used drugs since about 1962 or 1963. Following his arrest, he said to the police that he "had not been on the stuff for quite a while and now with all the pressures which had been on him—," at which point he cut short with the statement, "What the hell, you saw my arms anyway."

The argument that the evidence concerning the marks on his arm which indicated that he had been administering drugs to himself should not have been submitted to or considered by the jury is without merit. The claim that the possession of a prohibited narcotic for purely personal use is not a crime is wholly unsupported in law. The defendant relies upon the rule established in *Robinson* v. *California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758, which declared unconstitutional a statute which purported to make drug addiction a crime. His reliance is misplaced for two reasons. In the first place, there is no claim that the defendant is a drug addict. His own testimony indicates his claim to be quite the contrary. In the second place, the court, in *Robinson*, expressly stated (p. 664) that a state may impose criminal sanctions for the possession of narcotics within its borders. The statute with which we

are concerned provides that "if a court by which a person has been convicted of a violation of this . . . [statute] finds that the convicted person is drug dependent and that his violation was committed for the primary purpose of sustaining his drug dependence or because he was drug dependent it may, *in addition to the penalties provided herein,* issue an order committing such person to the commissioner of mental health for a period not to exceed twenty-four months." (Emphasis added.) Public Acts 1967, No. 555 § 41 (a) (General Statutes § 19-485 [a]). Furthermore, the statute provides that the court may require a medical examination of a person charged with a violation of the statute and that if the results indicate drug dependency the court may, upon agreement between the prosecutor and the accused, suspend prosecution, release the accused for treatment by the commissioner of mental health, and, under certain circumstances, dismiss the charges against the accused. Public Acts 1967, No. 555 § 40 (as amended, General Statutes § 19-484). The statute thus makes clear that the possession of prohibited narcotics is a criminal offense. There is nothing in the statute or in the rule laid down by *Robinson* v. *California,* supra, to support the claim that possession becomes legal when the drug is for personal use. The statute obviously seeks to empower the court to deal with the drug-dependent person in a fashion offering hope for remedying his affliction. Consequently, it was entirely proper for the jury to have before them for consideration the evidence indicative of the defendant's own use of narcotics.

In a criminal case, it is within the province of the jury to draw reasonable and logical inferences from the facts proven. *State* v. *Gonski,* 155 Conn. 463,

467, 232 A.2d 483. There was ample evidence, including the reasonable inferences to be drawn from the facts proven, from which the jury could conclude that the defendant was guilty of the crime charged.

It is unnecessary to discuss in detail the various requests to charge which were designed to instruct the jury that the applicable law embraced the unsound claims which we have discussed. Our examination of the charge satisfies us that the court gave sufficient and proper instructions on the points in issue for the guidance of the jury.

No other assignment of error requires discussion. There is no error.

In this opinion the other judges concurred.