## STATE OF CONNECTICUT *v.* CESAREO HERNANDEZ
## (SC 16151)

McDonald, C. J., and Borden, Norcott, Katz and Palmer, Js.

*(One justice dissenting)*

Argued April 18—officially released October 10, 2000

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, supervisory state's attorney, for the appellant (state).

*Teri E. Bayer*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The defendant, Cesareo Hernandez, was charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] possession of

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b),[2] conspiracy to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 (a)[3] and 21a-278 (b), conspiracy to sell narcotics within 1500 feet of a school in violation of §§ 53a-48 (a) and 21a-278a (b), and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).[4] Following the state's

[2] General Statutes § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place. For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 21a-267 (a) provides: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance as defined in subdivision (9) of section 21a-240. Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor."

failure to comply with the trial court's order to disclose the identity of a confidential informant, the court dismissed the charges against the defendant. With the permission of the trial court,[5] the state appealed to the Appellate Court, which concluded that the trial court properly had ordered disclosure. *State* v. *Hernandez*, 53 Conn. App. 706, 714–15, 736 A.2d 137 (1999). We granted certification limited to the following issue: "Did the Appellate Court properly affirm the trial court's order requiring the state to disclose the identity of a confidential informant?" *State* v. *Hernandez*, 250 Conn. 909, 738 A.2d 653 (1999). We affirm the judgment of the Appellate Court.

The underlying facts are set forth by the Appellate Court as follows: "The signed affidavit, which the police submitted in support of their application for a search and seizure warrant for the defendant's apartment, discloses that on February 18, 1995, at approximately 5 p.m., a confidential informant contacted Detectives Anthony Martinez and Stephen Grabowski of the Hartford police department. The informant stated that 'Munie,' whom the detectives recognized as Louis Rosario, would be packaging heroin in the first floor apartment of 94 Whitmore Street in Hartford. The informant also stated that Rosario drove a red Camaro. At approximately 6 p.m., the detectives observed Rosario and an unidentified Hispanic male exit the first floor apartment at 94 Whitmore Street and travel to Rosario's home at 3 Mannz Street in Hartford.

"On that same day, at approximately 6:30 p.m., the detectives met with the informant. The informant stated that he had observed Rosario and another Hispanic male, whom he knew as Luis Martinez, bring a large

---

[5] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

amount of heroin into the first floor apartment at 94 Whitmore Street and that 'as we speak they are packaging heroin . . . .' The detectives returned to 94 Whitmore Street and observed that Rosario's red Camaro was parked outside the apartment building.

"The detectives subsequently obtained a search and seizure warrant for the first floor apartment at 94 Whitmore Street. The police incident report discloses that on February 18, 1995, at approximately 8:30 p.m., the detectives executed the warrant. Several minutes after the police gained entry, the defendant and his wife, Andrea Hernandez, returned to the apartment. The police seized 100 glassine bags from a dresser drawer in the defendant's bedroom, and the powder in these bags later tested positive for heroin." *State* v. *Hernandez*, supra, 53 Conn. App. 708–709.

After being charged with the narcotics offenses, the defendant filed a notice of alibi in which he claimed that several witnesses would testify that, on February 18, 1995, he had not been in the apartment at 94 Whitmore Street during the period in question. Id., 709. The defendant filed a motion for disclosure of the identity of the state's informant. Id. The trial court made a predicate factual finding, based on the warrant affidavit,[6]

---

[6] "The trial court determined that [i]t may reasonably be inferred from the [warrant] affidavit that the informant told the police that he had been in the apartment while Rosario and Martinez were packaging the drugs. . . . The signed affidavit, which the detectives submitted in support of their application for a search and seizure warrant for the defendant's apartment, states that the affiants on 2-18-95 at approximately 1830 hours met with the informant who stated that he *observed* [Rosario] and another Hispanic male who he knows as Luis Martinez bring a large amount of heroin into the apartment at 94 Whitmore Street, first floor apartment. . . . The informant stated that Rosario . . . had returned to 94 Whitmore Street and that as we speak they are packaging heroin in the targeted location. . . .

"On the basis of our review of the record, we conclude that the trial court's finding that the informant was in the apartment when Rosario and Martinez arrived with the heroin and then packaged it was not clearly erroneous." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hernandez*, supra, 53 Conn. App. 710–11.

that the informant had observed Rosario and Martinez from *within* the defendant's apartment. Id., 710. After applying the test set forth in *Roviaro* v. *United States*, 353 U.S. 53, 62, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), which requires the court to balance the public interest in the flow of information to the police against the individual's right to prepare a defense, the trial court granted the defendant's motion for disclosure. *State* v. *Hernandez*, supra, 53 Conn. App. 709. The state refused to disclose to the defendant the identity of the informant and, consequently, the trial court dismissed the case. Id. This appeal followed.

Before the Appellate Court, the state argued that: (1) there was no basis in the record for the trial court to find that the informant was inside the apartment when he observed Rosario and Martinez bringing the narcotics into the defendant's apartment; (2) it was improper to order disclosure because the confidential informant had acted as a tipster rather than as a witness to or a participant in the offenses charged; (3) any testimony concerning the defendant's absence from his home when the narcotics were delivered and packaged lacks probative value concerning the defendant's knowledge, dominion and control over the narcotics found in his home; (4) the informant did not hear the disputed incriminating statements of the defendant and had nothing to offer on that issue; and (5) the defendant had other means of establishing his absence from his home immediately preceding his arrest.

The Appellate Court disagreed with the state and concluded that the trial court had not abused its discretion by ordering the state to disclose the identity of the confidential informant. Id., 714–15. Specifically, the Appellate Court upheld the trial court's conclusion that the defendant had a legitimate assertion that, based on the informant's presence inside the defendant's apartment, he could testify that persons other than the defen-

dant had introduced the narcotics into the defendant's apartment and had packaged the narcotics into distinctive bags that matched those bags later found in the defendant's bedroom. Id., 715.

On appeal to this court, the state claims that the Appellate Court applied an improper standard for disclosure and that, based upon the facts in the record, the defendant's need for disclosure fails to outweigh the state's strong interest in maintaining a necessary flow of information from confidential sources to the police. The defendant argues that the Appellate Court applied the proper standard for disclosure and that the facts of this case support the trial court's disclosure order. We agree with the defendant.

As a threshold matter, we set forth the standard by which an appellate court may review the propriety of a trial court's decision to order disclosure. It is a basic tenet of our jurisprudence that we afford deference to the trial court and assess the trial court's conclusions pursuant to an abuse of discretion standard. In the present case, we conclude that the Appellate Court utilized the proper standard in its review of the trial court's order of disclosure. "[T]he determination of whether an informer's identity shall be revealed is reviewed as a matter involving the exercise of discretion by the court." *State* v. *McDaniel*, 176 Conn. 131, 132–33, 405 A.2d 68 (1978); *State* v. *Johnson*, 162 Conn. 215, 229, 292 A.2d 903 (1972); *State* v. *Kiser*, 43 Conn. App. 339, 347, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action." (Internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 809, 695 A.2d 1010 (1997); *E.M. Loew's Enterprises, Inc.* v. *Surabian*, 146 Conn. 608, 612, 153 A.2d 463

(1959). "Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." *Burke* v. *Avitabile*, 32 Conn. App. 765, 771, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993); *Timm* v. *Timm*, 195 Conn. 202, 210, 487 A.2d 191 (1985).

I

The state first claims that the Appellate Court improperly focused on the materiality of the informant's probable testimony in its determination that his identity should have been disclosed. We disagree.

"The United States Supreme Court's decision in *Roviaro* v. *United States*, [supra, 353 U.S. 53], provides a starting point for our analysis of how courts should balance the state's interest in protecting informants against the defendant's interest in obtaining information useful in conducting his defense. Courts have recognized an informant's privilege. 'What is usually referred to as the inform[ant's] privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . [T]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.' " *State* v. *Richardson*, 204 Conn. 654, 657–58, 529 A.2d 1236 (1987), quoting *Roviaro* v. *United States*, supra, 59.[7] The privilege, however, must yield "[w]here

---

[7] Although *Roviaro* addresses federal evidentiary law, it has nonetheless been influential in our consideration of the disclosure of the identity of confidential informants. See, e.g., *State* v. *Jackson*, 239 Conn. 629, 632, 687 A.2d 485 (1997); *State* v. *Richardson*, supra, 204 Conn. 657–58; *State* v. *West*, 178 Conn. 444, 445, 423 A.2d 117 (1979); *State* v. *Harris*, 159 Conn. 521,

the disclosure of an informer's identity, or of the contents of his communication, is *relevant and helpful to the defense* of an accused, or is *essential to a fair determination* of a cause . . . ." (Emphasis added.) *Roviaro* v. *United States*, supra, 60–61. The defendant bears the burden of demonstrating such a need for disclosure. *State* v. *West*, 178 Conn. 444, 446, 423 A.2d 117 (1979).

We are unpersuaded that the Appellate Court employed an improper standard in its review of the trial court's order of disclosure.[8] First, contrary to the state's suggestion, the Appellate Court did not set forth a new rule that if any *material* testimony can be elicited from a confidential informant, his identity must be revealed. Instead, the Appellate Court properly responded to the state's argument that the informant had not witnessed anything of consequence, distinguished those cases relied upon by the state that upheld refusals to order disclosure, and refuted the state's assertion that the

527–28, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971).

[8] The state argues that the proper standard for reviewing a disclosure order is that the confidential informant's testimony must be "essential to the defense." See *State* v. *Jackson*, 239 Conn. 629, 636, 687 A.2d 485 (1997); *State* v. *West*, supra, 178 Conn. 445. To the extent that the state presents these cases as representative of a more restrictive disclosure standard than that set forth in *Roviaro*, the state misreads them. On the issue of whether a confidential informant's testimony was sufficiently important to outweigh competing concerns, both cases merely affirmed the trial courts' determinations that the defendants had failed to meet their burden of justifying disclosure. In *State* v. *West*, supra, 445–46, we applied *Roviaro* and upheld the trial court's decision not to order disclosure of the informant's identity because the defendant did not articulate *any* basis for needing to know this information. In *State* v. *Jackson*, supra, 631–32, although the trial court had determined that the informant's participation in the criminal transaction was not significant enough to warrant disclosure, the trial court had ordered disclosure because it had concluded that the evidence had not demonstrated that the informant's identity was, in fact, confidential. This court reversed, based on confidentiality grounds, and left undisturbed the trial court's determination that the defendant otherwise fell short of demonstrating a need for disclosure sufficient to overcome the informant's privilege. Id., 636.

testimony would be irrelevant. *State* v. *Hernandez*, supra, 53 Conn. App. 711–18. Thus, in the present case, rather than basing the propriety of the disclosure order on the materiality of the confidential informant's probable testimony, the Appellate Court merely rejected the state's arguments against disclosure that were predicated on the alleged *immateriality* of such testimony.

Second, the Appellate Court agreed with the trial court's conclusions, which went far beyond a materiality threshold. "The trial court concluded that disclosure of the informant's identity was necessary because '[t]he informant's information as may be inferred from the affidavit directly relates to the defenses asserted by the defendant. The information, and potentially the informant's testimony in court, could be highly exculpatory of the defendant. Indeed, that information and testimony could potentially exonerate him." Id., 712. Accordingly, the Appellate Court properly considered the degree to which the confidential informant's testimony would be relevant and helpful to the defendant. See *Roviaro* v. *United States*, supra, 353 U.S. 60–61. We conclude, therefore, that the Appellate Court applied the proper standard for disclosure.

## II

Having concluded that the Appellate Court applied the proper standard for disclosure of a confidential informant's identity, we next consider whether the facts in the record support the trial court's disclosure order. The state claims that the Appellate Court failed to recognize that the confidential informant in this case acted as a mere "tipster," overstated the importance of his probable testimony to the theory of the defense, and overlooked the cumulative nature of that testimony. We disagree.

*Roviaro* "suggests that the question of disclosure should be determined on a case by case basis, and

advocates the use of a balancing test. 'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " *State* v. *Richardson*, supra, 204 Conn. 658–59, quoting *Roviaro* v. *United States*, supra, 353 U.S. 62. Defenses that may merit disclosure include entrapment, mistaken identity, and lack of knowledge. *Roviaro* v. *United States*, supra, 64.

We begin by applying these standards to the present case. The defendant was charged with possessory narcotics offenses. "To prove either actual or constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it. *State* v. *Brunori*, 22 Conn. App. 431, 435–36, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990) . . . ." (Citation omitted.) *State* v. *Cruz*, 28 Conn. App. 575, 579, 611 A.2d 457 (1992). Thus, the defendant's defense— that he had no knowledge, dominion or control over the narcotics—would be a complete defense to the charged offenses. The confidential informant's potential testimony—that other people brought the narcotics into the defendant's house while he was away and that the defendant was not present when the narcotics were packaged at his home—is offered as circumstantial evidence of the defendant's lack of knowledge, dominion and control over the narcotics and, therefore, merits disclosure of the informant's identity.

Absent an explanation of how and when the narcotics came into the defendant's apartment—information that arguably could be provided only by means of the confidential informant's potential testimony—the jury could draw the inference that the defendant either brought the narcotics there himself, or that the narcotics had been there long enough for the defendant to have seen or otherwise known about them. The confidential informant's potential testimony, coupled with the testimony of the defendant's alibi witnesses, reasonably could provide an explanation that negates these inferences. Because this could be invaluable to the defense, disclosure was required.

The state makes several arguments to support its claim that, based on the facts in the record, it was an abuse of discretion for the trial court to have ordered disclosure. First, the state argues that the trial court improperly failed to recognize that the confidential informant was a mere tipster. In this regard, the state argues that the informant fits the classic description of a "tipster"—one who provides information leading to the issuance of a search warrant, but is neither an eyewitness to, nor a participant in, the alleged crimes charged. We disagree.

The state relies on several Connecticut cases that hold that disclosure is not required where the confidential informant is a tipster. *State* v. *Richardson*, supra, 204 Conn. 665; *State* v. *Conger*, 183 Conn. 386, 392–93, 439 A.2d 381 (1981); *State* v. *West*, supra, 178 Conn. 445; *State* v. *McDaniel*, supra, 176 Conn. 133; *State* v. *Johnson*, supra, 162 Conn. 227–29; *State* v. *Harris*, supra, 159 Conn. 526–29. We have not said, however, that a confidential informant's status as a tipster precludes disclosure on that basis alone, where there are other valid means for ordering disclosure. The present case is distinguishable from the cases upon which the state relies in that it involves review of a trial court's

discretionary decision to *grant,* rather than to *deny,* a defendant's motion for disclosure. Most importantly, however, the trial court's decision was based on the importance of the confidential informant's testimony to the defendant, not the status of the confidential informant.

The disclosure analysis involves balancing competing interests. The informant's privilege exists to promote the flow of information to law enforcement. The exception to the privilege exists because the privilege may, at times, infringe on the rights of criminal defendants. The balancing involves not merely the form in which the confidential informant gives aid to law enforcement, but also the substance of the information that the confidential informant can offer. For the state, the confidential informant's role here ended in obtaining the search warrant: he has nothing to offer to the state's prosecution of the defendant. For the defendant, however, the confidential informant almost certainly would be an important witness in his effort to establish a lack of knowledge defense. To limit the disclosure to those confidential informants who have witnessed elements necessary to the state's case would ignore the principle that the nature of the defense may be a significant factor in the determination of whether disclosure is appropriate. See *Roviaro* v. *United States,* supra, 353 U.S. 62. Therefore, we conclude that, regardless of whether the confidential informant may be characterized as a "tipster," if the substance of the potential testimony otherwise supports disclosure, then disclosure is proper.

The state's second argument addresses the substance of the confidential informant's testimony. The state contends that the confidential informant's testimony would not be probative of any critical issues in the case because the actual presence of the defendant in the apartment was not required for proof of the charged

offenses. The defendant counters that the confidential informant's potential testimony would be probative of the critical question of whether the defendant had knowledge of, and dominion and control over, the narcotics because it could establish the time frame during which the narcotics entered the defendant's apartment, as well as the identity of those who brought the narcotics there. We agree with the defendant.

Although the state correctly contends that the confidential informant's testimony would not be *conclusive* regarding the question of the defendant's knowledge, dominion and control of the narcotics because the defendant's presence is not an essential element of the charged possessory offenses, we have never limited disclosure to situations in which the known content of the confidential informant's testimony would certainly or very likely exonerate a defendant. The issue is whether the confidential informant's testimony would be highly probative and important, if not critical, to his defense. We conclude that the informant's potential testimony in this case meets that threshold.

The state's final argument is that the confidential informant's testimony would be cumulative because the defendant has other means of proving that he was not at his apartment when the confidential informant allegedly witnessed the packaging of the narcotics. We disagree. The informant can potentially testify when the drugs were brought into the defendant's home, who brought them there, and whether the defendant was present at that time. Additionally, it is arguable that the testimony of the alibi witnesses would not be useful to the defendant without the evidence that could be provided only by the informant: the time in which the narcotics were brought to the defendant's apartment and who was present at that time. Therefore, we conclude that the confidential informant's testimony would not be cumulative.

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

MCDONALD, C. J., dissenting. I do not agree that the interest of the defendant, Cesareo Hernandez, in obtaining the identity of the confidential informant outweighs the state's interest in protecting the informant and in maintaining the flow of valuable information to law enforcement agencies. I would therefore reverse the judgment of the Appellate Court.

I agree with the majority that " '[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' " *State* v. *Richardson*, 204 Conn. 654, 658, 529 A.2d 1236 (1987), quoting *Roviaro* v. *United States*, 353 U.S. 53, 60–61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). The "danger to an informant's life must be given significant weight in striking the *Roviaro* balance"; (internal quotation marks omitted) *United States* v. *Jackson*, 990 F.2d 251, 255 (6th Cir. 1993); between the state's interests in protecting the informant and the defendant's interest in disclosure. I would hold, therefore, that "defendants face 'a heavy burden . . . to establish that the identity of an informant is necessary to [the] defense.' . . . Speculation as to the information the informant may provide is insufficient." (Citation omitted.) *United States* v. *Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994).

In applying this test to this or any case, we must start with the nature of the case brought against the defendant. In this case, the evidence would be that at 8:30 p.m. on February 18, 1995, the Hartford police broke into the defendant's apartment at 94 Whitmore Street in Hartford, found no one there and seized 100 bags of packaged heroin. Within a few minutes, while

the officers were still searching his apartment, the defendant returned there. The defendant explained to the officers that just prior to the detectives' arrival Luis Santiago had left the apartment with a number of bags of narcotics. The defendant continued to explain that the 100 bags were dropped off for him by Santiago.

The officers had observed Louis Rosario and another man leave the apartment at 94 Whitmore Street at about 6 p.m. that same day. The officers also observed Rosario's vehicle parked at the apartment again at 6:30 p.m. Thereafter, the officers prepared a search warrant affidavit and obtained the search warrant used to conduct the raid.

With respect to the nature of the informant's need to testify, the facts were that the informant had called the officers at about 5 p.m. that day and reported that Rosario was packaging heroin at the apartment since Rosario had been arrested with a large amount of heroin at Rosario's home on February 10, 1995. Thereafter, the officers went to the premises at 6 p.m., observed Rosario's vehicle there and saw Rosario and another man leave the premises for Rosario's home. At 6:30 that evening, the officers met with the informant, who told them that Rosario had returned to the apartment and, with Luis Martinez, was packaging heroin at the apartment as the officers were speaking to the informant. The officers returned to the apartment and observed Rosario's vehicle parked there.

The charges against the defendant were, among other things, possession of narcotics with intent to sell by a person who is not drug-dependent and conspiracy. As the majority observes, the issue in this case was whether the defendant knew of the character of the heroin and its presence at the apartment and exercised dominion and control over it. The state would offer the defendant's statement that he knew that Santiago had left

the 100 bags of heroin at the defendant's apartment after leaving with some other drugs just before the raid. The defendant would contest making such a statement and would prove that he was somewhere else just before the raid occurred.

The majority concludes that the informant might testify that Rosario and Martinez had left the drugs at the apartment and that the defendant was not present there when this occurred. The issue, however, concerns not whether the defendant was present when the drugs were brought to his apartment, but the defendant's state of mind—his knowledge that he had a large amount of narcotics in his apartment.

The issue in this case, therefore, is not the truth of the defendant's statement that *Santiago* had just brought the drugs to his apartment, but whether he made the incriminating statement revealing his knowledge that the drugs were at his apartment and under his control. The informant could not by any stretch of the imagination give testimony as to what the defendant told the officers. There was simply no evidence or claim that the informant was present at the time of the drug raid.

Furthermore, if the defendant required evidence that he was not present when the heroin was brought to the apartment, the officers could simply be asked if they observed the defendant at the apartment when the drugs were delivered there. There is nothing in the record indicating that the state claimed to have any evidence that the defendant was so present.

Finally, the informant should be required to testify if he could be helpful to the defendant. I fail to see how evidence from the informant that Rosario was in and out of the defendant's apartment packaging heroin there and leaving behind valuable drugs in the apartment regularly occupied by the defendant would be helpful

to the defendant, even if the defendant had not been present on one occasion while the drugs were being packaged. I would conclude that the state's interest in protecting the safety of the informant and preserving the flow of valuable information to law enforcement agencies, which is vital to effective narcotics enforcement, clearly outweighs the defendant's interest in disclosure. This case sets a precedent that will permit those who allow drug dealers to use their houses to escape prosecution, and that does not bode well for Connecticut cities struggling to overcome the scourge of narcotic drugs.