## STATE OF CONNECTICUT *v.* ANDRE A. MESSAM
### (AC 28414)

Flynn, C. J., and Lavine and Pellegrino, Js.

Argued April 18—officially released July 1, 2008

*Mary H. Trainer*, special public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen,*

state's attorney, and *Dina Urso*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Andre A. Messam, appeals from the judgment of conviction, following a jury trial, of one count of possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant claims that (1) the court abused its discretion in denying his motion for disclosure of the identity of a confidential informant, (2) the court abused its discretion in denying his motion for a mistrial after a witness commented on uncharged misconduct and (3) his right to a fair trial was prejudiced when one of the state's witnesses violated the court's sequestration order. We affirm the judgment of the trial court because we conclude (1) that the defendant's arrest on a possession of narcotics charge was not directly related to the confidential informant but, rather, it was based on the defendant's possessing and dropping drugs in front of several police officers immediately prior to the officers' execution of a warrant to search him, (2) that the brief improper comment by one of the witnesses was invited by the defendant and (3) that the defendant failed to preserve for appellate review his claim that witnesses violated the court's sequestration order.

The jury reasonably could have found the following facts. Members of the Stamford police department had obtained a search warrant allowing them to search the defendant and 26 Orchard Street. On July 16, 2004, prior to executing the search warrant, Officer Steven Murphy observed the defendant leave 26 Orchard Street and walk toward Selleck Street. Murphy notified other officers via his police radio, and the other officers arrived at Selleck Street in their unmarked police vehicle, where they observed the defendant. As the officers, each wearing a "raid jacket" bearing the letters

"POLICE," turned into a driveway on Selleck Street, the defendant noticed them and dropped an item from his right hand. The officers exited the vehicle and approached the defendant. Sergeant James Matheny grabbed the defendant by the right arm, Officer Chris Baker grabbed him by the left arm and Officer Kevin Fitzgibbons picked up the item that the defendant had dropped to the ground. The item was a small plastic bag containing crack cocaine.

The defendant was handcuffed and transported to the Stamford police headquarters, where he was charged with possession of narcotics. The defendant's first trial ended in a mistrial; his second trial resulted in a conviction. After pleading guilty to a part B information, in which he was charged with being a second time offender, the court sentenced the defendant to a term of three years imprisonment, with three years special parole. This appeal followed.

I

On appeal, the defendant claims that the court abused its discretion in denying his motion for disclosure of the identity of a confidential informant. He argues that he "was entitled to disclosure of the identity of the informant because the informant had knowledge relevant to this defendant's theory of defense," which was entrapment. We do not agree.

The following additional facts are relevant to our resolution of the defendant's claim. The defendant filed a pretrial motion requesting disclosure of the identity of a confidential informant who had participated in two controlled drug buys from the defendant prior to the police obtaining the search warrant. The court conducted an evidentiary hearing on the motion. At the hearing, Baker testified that the confidential informant had contacted him stating that he could purchase drugs

from a black male named "Dre." This confidential informant previously had provided useful information to Baker, leading to numerous drug seizures and arrests. The confidential informant told Baker that he could walk to a house at 26 Orchard Street, whistle, and a man named "Dre" would come out of the house and sell him drugs. Baker and other officers conducted surveillance while the confidential informant made two controlled drug buys from the defendant. After the officers had witnessed these drug purchases, they applied for, and obtained, a search warrant for 26 Orchard Street and for the defendant. At the time the defendant was seized, the officers had not executed the warrant, and the confidential informant was not present. On the basis of this evidence, the court denied the defendant's motion for disclosure.

"As a threshold matter, we set forth the standard by which an appellate court may review the propriety of a trial court's decision [regarding a motion for] disclosure. It is a basic tenet of our jurisprudence that we afford deference to the trial court and assess the trial court's conclusions pursuant to an abuse of discretion standard. . . . [T]he determination of whether an informer's identity shall be revealed is reviewed as a matter involving the exercise of discretion by the court. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 254 Conn. 659, 665, 759 A.2d 79 (2000).

"In *Roviaro* v. *United States* [353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)], the United States Supreme Court had occasion to define the nature and scope of the informant's privilege. What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of

persons *who furnish information of violations of law to officers charged with enforcement of that law.* . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens *to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.* . . .

"*Roviaro* established a test for assessing challenges to the applicability of the informant's privilege. This test involves the balancing of two competing interests: (1) the preservation of the underlying purpose of the privilege; and (2) the fundamental requirements of fairness. . . . The underlying purpose of the privilege is to protect the public interest in the flow of information to law enforcement officials. The fundamental requirements of fairness comprise the defendant's right to a fair trial, including the right to obtain information relevant and helpful to a defense. . . . Whether [disclosure is warranted depends] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. . . .

"Once the state has invoked the privilege, it is then the defendant's burden to show that the balance of the evidence falls in favor of disclosure. . . . When the defendant demonstrates that disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense, or is essential to a fair determination of a cause, the government's privilege must yield. . . . Disclosure is essential to the defense where nondisclosure could hamper the defendant's right to a fair trial, such as where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining

guilt or innocence. . . . Specific defenses that may merit disclosure include entrapment, mistaken identity and lack of knowledge. . . . Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Bunker*, 89 Conn. App. 605, 625–26, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). "Before a court will compel disclosure, the informant typically must be a participant in the alleged crime or an eyewitness thereto. . . . [C]ourts generally agree that if the informant provides information to law enforcement officers without any further involvement, disclosure must yield to the protection of the informant." (Citations omitted.) *State* v. *Lee*, 30 Conn. App. 470, 479, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 553 (1994).

The defendant argues that disclosure was required in this case because it would have assisted with his entrapment defense.[1] He asserts that this case is similar to *State* v. *Hernandez*, supra, 254 Conn. 668–69, which he characterizes as a case in which "the court found that the [confidential informant] had knowledge relevant to the defendant's theory of defense and ruled that disclosure of his identity was required." The defendant

---

[1] General Statutes § 53a-15, our entrapment statute, provides: "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant, or by a person acting in cooperation with a public servant, for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct."

We note that in this case, the defendant does not appear to have put forth an entrapment defense. Rather, it appears that his defense was that he was set up or framed and never possessed the drugs. When questioned about this during oral argument before this court, the defendant's appellate counsel continued to state that the defense was one of entrapment, although she argued that the defendant did not possess the drugs and that he had been set up.

also argues that in *Hernandez*, "[d]espite the fact that it was not known how the [confidential informant] would testify—i.e., support the defendant's version of events—the court reasoned that the [confidential informant] had information crucial to key disputed issues as framed by the defendant. Therefore, fairness to the defendant's defense required disclosure." The defendant asserts that in the present case, "the [confidential informant] had information relevant to the defendant's defense of entrapment," and, therefore, the court abused its discretion in denying the defendant's motion for disclosure. We do not agree, and we conclude that *Hernandez* readily is distinguishable from the present case.

In *Hernandez*, our Supreme Court explained that the testimony of the informant in that case potentially could have established "when the drugs were brought into the defendant's home, who brought them there, and whether the defendant was present at that time." Id., 672. The trial court also had made a factual finding that the informant in *Hernandez* had been in the defendant's home and had observed what had transpired. Id., 664. In the present case, the confidential informant could not have provided any such testimony. He was not present at the time the defendant dropped the drugs on the ground immediately preceding the defendant's arrest, nor was there any indication at the hearing on the motion for disclosure that the confidential informant had participated in this event.

In *State* v. *Kiser*, 43 Conn. App. 339, 349, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997), as in the present case, there was "no indication that the confidential informants were participants in the crimes with which the defendant was charged." The informants in *Kiser* had told the police about narcotics sales. This court stated in that case:

"The charges against the defendant did not include the sale of a narcotic or controlled substance but were limited to possession with intent to sell. Moreover, the defendant conceded at trial that the informants were neither witnesses to nor participants in the crimes with which the defendant was charged. Thus, the informants did nothing more than provide the police with information that was included in the application for a search and seizure warrant. It was the evidence that was discovered in the course of the search that gave rise to the defendant's convictions, not the information used to establish probable cause for the warrant. When the evidence discloses that the informer was merely an informer and nothing more the government is not compelled to disclose his identity." (Internal quotation marks omitted.) Id.

Similarly, in the present case, the confidential informant provided police with information and participated in two controlled buys that gave the police sufficient probable cause to secure a warrant. Once that warrant was secured, the confidential informant had nothing else to do with the later surveillance of the defendant. Additionally, the police arrested the defendant after they saw him drop an item in response to his realization that the police officers were present. The resulting arrest and possession of narcotics charge were based on the officers' direct observation of the defendant's possessing and dropping the drugs and, therefore, were unrelated to the confidential informant or the warrant. The defendant was not arrested or charged with any crime related to the two controlled buys in which the confidential informant participated. When the officers observed the defendant drop drugs on the ground, they had sufficient probable cause to arrest him on the basis of their observations. Because the confidential informant was not there to witness the defendant in possession of the drugs or his dropping the drugs, the court

reasonably concluded that the informant would not have had any relevant testimony to offer as to the defendant's defense. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for disclosure.

## II

The defendant next claims that the court abused its discretion in denying his motion for a mistrial. He argues that Baker improperly testified during cross-examination by defense counsel about his knowledge that the defendant had engaged in two controlled buys. The state argues that the testimony was invited by defense counsel. We agree with the state.

The following additional facts are relevant to our resolution of the defendant's claim. During the pretrial motion hearing, defense counsel questioned Baker and Fitzgibbons as to the contents of three police reports. Two of these reports related to the two separate controlled buys in which the defendant had engaged with the confidential informant. The other report related to the execution of the search warrant and the arrest of the defendant. Although the police reports regarding the controlled buys were not the subject of a pretrial motion, it appears that all parties agreed that information about these reports and the controlled buys would not be presented to the jury. The state also acknowledged to the court that it had "cautioned [Baker] that there is nothing to come in about the buys." Despite this caution, Baker did make reference to the two buys, which the defendant claims deprived him of a fair trial.

During cross-examination, the following colloquy occurred between defense counsel and Baker:

"Q. Let me show this document and ask you if you recognize it.

"A. Sure. Yes, sir. I recognize it.

"Q. Is that a fair and accurate representation of your report and the events that occurred in relation to [the defendant]?

"A. The end of the investigation. Correct.

"Q. Is there another report that you prepared?

"A. Yes.

"Q. Where is that?

"A. I don't know, sir.

"Q. So, there is another report. Is this the only one you gave to the state's attorney?

"A. All of the reports were in a file, sir.

"Q. In your file at police headquarters?

"A. In a file that goes to [the police] records division, sir.

"Q. Pardon?

"A. In a file that goes to [the police] records division. I don't personally give anything to the state's attorney.

"Q. So, there is another report other than this one?

"A. There [are] two buy reports.

"Q. All right."

Defense counsel immediately asked the court to excuse the jury, which it did, and defense counsel moved for a mistrial. Defense counsel argued that testimony regarding the controlled buys was not allowed and that a simple yes or no answer had been in order to this question. He further argued that Baker "knew we were talking about just the Selleck Street arrest, and [the questions] had absolutely nothing to do with the search warrant or the buys [that were] incident to that search warrant." The state argued that the comment was invited by the repeated questions, especially

when defense counsel fully knew the contents of the other reports. The court had the court reporter play back the tape of the colloquy between defense counsel and Baker several times, and, after allowing both sides to argue the merits of a mistrial, the court stated the following: "I listened to the tape a few times in order to clear my head [as to] just what the questions were. After . . . Baker discuss[ed] his report concerning Selleck Street, [defense counsel] asked . . . Baker, first: Is there another report? The answer was: Yes. There was an opportunity there, after the answer was yes, to ask the question about Selleck Street. [However, defense counsel] responded: So, there is another report? . . . Baker got into the colloquy about one in the police file and one that goes to records because he doesn't give a file directly to the state's attorney.

"And then [defense counsel] offered a third time, asked: There is—so, there is another, there is another other than this one? And in response to that third prompt as to the other report . . . Baker respond[ed] concerning the buy reports. I think [that] under those circumstances, with the prior knowledge that [defense counsel] had concerning the substance of the other report that concerned the non-Selleck Street matter . . . and with regard to the fact that, with regard to the first question: Is there another report? And . . . Baker's answer is: Yes. I believe that the response at that point became invited by [defense counsel] to some extent.

"I think that [defense counsel] had the opportunity to ask the follow-up question without getting into the response by . . . Baker. So, with a curative instruction, which I'm going to give, I'm going to deny the motion for a mistrial."

Defense counsel stated for the record that a curative instruction would not be adequate. The court noted the

exception and called the jury back in. The court then gave the following instruction to the jury: "[T]he question put to . . . Baker by [defense counsel] just before I recessed to let you go, concerned a report prepared by . . . Baker. Other than the report prepared by . . . Baker, concerning the Selleck Street incident, that other report or its subject matter is not evidence in this case. And I instruct you that you are not to consider, in determining the guilt or innocence of the defendant in this case . . . Baker's answer concerning the subject matter of that other report. You are only to consider whether or not on the date at issue the defendant possessed narcotics as claimed by the state in this case." The court also offered to give an additional curative instruction to the jury during its final charge, but defense counsel asked the court to refrain from doing so.

On appeal, the defendant argues that "[t]here is no doubt that that statement by . . . Baker, whether intentional or not, had a prejudicial effect on the jury and that the court should have granted the motion for a mistrial. . . . As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible." We agree with the defendant's statement of the general rule; nevertheless, we conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

We begin our analysis by setting forth the appropriate standard of review. Although "the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not

to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court. . . . Put another way, [o]n appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 87 Conn. App. 93, 99, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005).

On appeal, when we are asked to consider whether the court abused its discretion, we must be mindful that "[d]iscretion involves a choice by a court to do or not to do something that one cannot demand as an absolute right. Courts exercise discretion in cases where impartial minds could hesitate, which exercise usually entails a balancing of the relative gravity of the factors involved. . . . An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Citation omitted.) *In re Shaquanna M.*, 61 Conn. App. 592, 603, 767 A.2d 155 (2001).

In this case, we conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial after finding that defense counsel had invited Baker's brief remark concerning the "two buy" reports. "Action induced by an appellant cannot ordinarily be a ground of error. . . . When the claimed error is the result of a question posed by the defendant on cross-examination, [s]o long as the answer is clearly responsive to the question asked, the questioner may not later

secure a reversal on the basis of any invited error." (Citations omitted; internal quotation marks omitted.) *State* v. *Harrison*, 34 Conn. App. 473, 488, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994); see also *State* v. *Polanco*, 26 Conn. App. 33, 37, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991). Although the defendant argues that the final question required only a yes or no answer, he had been given a yes answer already on the same question. Despite this, counsel continued to press Baker as to whether there were additional reports, knowing that there were a total of three reports, two of which related to the controlled buys. Counsel's repeated questions opened the door to Baker's answer, which was responsive to the question.

Additionally, even though Baker's answer was invited by defense counsel, the court took action to remedy the situation and to avoid any possible prejudice to the defendant by striking the remark and telling the jury to disregard it. The court also offered to give an additional curative instruction during its final charge to the jury, but defense counsel declined the court's offer. Absent evidence to the contrary, we presume that the jury followed the court's limiting instruction. See *State* v. *Nash*, 278 Conn. 620, 659, 899 A.2d 1 (2006). "Such curative instructions are entitled to great weight and ordinarily prevent an appellate court from finding that [there was] reversible error." (Internal quotation marks omitted.) *State* v. *Youdin*, 38 Conn. App. 85, 94, 659 A.2d 728, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995).

After reviewing the record, we conclude that Baker's brief statement, which was invited by defense counsel, did not rise to the level of denying the defendant the right to a fair trial. Furthermore, the defendant has failed to establish that any alleged prejudice that might have resulted from this induced error was not cured by the court's striking of the testimony and its curative instruction. Accordingly, the court did not abuse its

discretion in denying the defendant's motion for a mistrial.[2]

## III

The defendant next claims that his right to a fair trial was violated when the court's sequestration order was not followed by some of the witnesses. He asserts that this claim was preserved by his filing of a postverdict motion for a judgment of acquittal. The state contends that this evidentiary claim was not preserved because (1) the defendant never objected at trial, and his motion for a judgment of acquittal made no mention of the sequestration order, and (2) even if the motion had been brought on this basis, "a motion for a judgment of acquittal following a guilty verdict by the jury is limited to a challenge as to the sufficiency of the evidence of an offense; Practice Book § 42-51; and, therefore, cannot possibly preserve this claim for appeal." We agree that the defendant offered no objection to this alleged violation, and, therefore, this claim was not preserved.[3]

Rulings related to the violation of a sequestration order are evidentiary in nature. *State* v. *Falby*, 187 Conn. 6, 25–28, 444 A.2d 213 (1982). As this court explained in *State* v. *Paris*, 63 Conn. App. 284, 775 A.2d 994, cert. denied, 257 Conn. 909, 782 A.2d 135 (2001), when a defendant offers no objection at trial to the admission of allegedly improper evidence, such a claim may not be preserved by the filing of a postverdict motion. Id., 294. We further stated that "this court will refrain from reviewing claims on evidentiary rulings in situations in which counsel has failed to make an objection. . . .

[2] We note, as well, that the reference to the "two buy reports" did not indicate explicitly that the defendant himself had been involved in two previous illicit drug transactions.

[3] In so concluding, we find it unnecessary to consider whether such a claim ever could be preserved in a motion for a judgment of acquittal.

We are not persuaded that evidentiary claims, not made at trial, can be preserved for appeal by raising them in a motion for a new trial after a guilty verdict. The problems inherent in allowing counsel to wait until after an adverse verdict to raise such objections to evidence are too obvious to warrant discussion." (Citations omitted.) Id., 294–95. Accordingly, we conclude that the defendant's claim is unpreserved and we decline to review it.

Our rule of law has been clear: "In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005). Having failed to offer an objection at trial, the defendant has not preserved this claim for appellate review.

The judgment is affirmed.

In this opinion the other judges concurred.