STATE OF HAWAII, Plaintiff-Appellee,
v.
WALTER WESTBROOK, JR. Defendant-Appellant.
No. 28547.
Intermediate Court of Appeals of Hawaii.
May 28, 2008.
On the briefs:
JOYCE K. MATSUMORI-HOSHIJO, for Defendant-Appellant.
BRIAN R. VINCENT, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellee.
SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J. FUJISE and LEONARD, JJ.
Defendant-Appellant Walter Westbrook, Jr. (Westbrook) appeals from the Judgment of Conviction and Sentence filed on April 25, 2007 in the Circuit Court of the First Circuit (circuit court).[1]
On November 30, 2005, Westbrook was charged with Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1243 (Supp. 2007) and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (1993).
The charges stemmed from a search conducted by Honolulu police on November 22, 2005 at a two-story residence located at 1746 Kamehameha IV Road in Honolulu. During the search of the first floor of that residence, various items were found in a room designated by police as Room 3. Those items formed the basis of the charges against Westbrook.
The case was tried to a jury, and Westbrook moved for a judgment of acquittal under Hawai`i Rules of Penal Procedure (HRPP) Rule 29(a) at the end of the State of Hawai`i's (State) case. That motion was denied. Westbrook did not renew the motion at the end of all the evidence. The jury found Westbrook guilty of both counts, and the circuit court sentenced him to five years of imprisonment on each of the two counts, to be served concurrently, with a mandatory term of imprisonment of one year and eight months.
On appeal, Westbrook claims that (1) the circuit court erred by admitting what appears to be a rental receipt and a traffic citation with Westbrook's name on it without proper foundation, (2) the circuit court plainly erred by failing to instruct the jury that they must unanimously agree which act constituted the conduct element of each offense that Westbrook was charged with, (3) there was insufficient evidence to support Westbrook's conviction for Promoting a Dangerous Drug in the Third Degree and Unlawful Use of Drug Paraphernalia,[2] and (4) "[i]n the alternative," Westbrook's trial counsel was ineffective by (a) failing to object to the admission of the citation, and (b) failing to request a jury instruction on unanimity.
After a careful review of the record and the briefs submitted by both parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Westbrook's points of error as follows:
(1) With regard to the rental receipt, the State concedes that "no foundation was laid by the apparent landlady . . . as to its significance[,]" and "[t]hus the rental receipt would not appear to fall under the business records exception to the hearsay rule." We agree that there was no basis for admitting the receipt to establish the truth of the matters asserted on the receipt,[3] and accordingly the circuit court should not have admitted it into evidence. Hawai`i Rules of Evidence (HRE) Rule 802. Because the receipt was not admissible, we will not consider it in evaluating the sufficiency of the evidence. State v. Wallace, 80 Hawai`i 382, 411-13, 910 P.2d 695, 724-26 (1996).
With regard to the citation, we review for plain error since Westbrook did not object to its admission. HRPP Rule 52(b). When Westbrook testified at trial, he acknowledged that the citation had been issued to him and that he had given the address "1746 Kamehameha IV." In these circumstances, we find no plain error.
(2) We conclude that the State failed to introduce sufficient evidence of Westbrook's guilt on both counts. "The test on appeal for a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." State v. Kido, 102 Hawaii 369, 379, n.16, 76 P.3d 612, 622, n.16 (App. 2003) (internal quotation marks and citations omitted). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion." Id. "The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence." Id.
"In this jurisdiction, possession can be either actual or constructive." State v. Moniz, 92 Hawaii 472, 475, 992 P.2d 741, 744 (App. 1999) (citation omitted). "Constructive possession reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his or her person at the time of arrest." Id. (internal quotation marks, brackets, and citation omitted).
There was no evidence that Westbrook had actual possession of any of the items at issue in this case. Thus, the State was required to prove that Westbrook had constructive possession to convict him of Promoting a Dangerous Drug in the Third Degree and Unlawful Use of Drug Paraphernalia.
In Moniz, this court stated:
Factors that have been considered by other courts as inferring a nexus between a defendant and the drugs found include:
1) the defendant's ownership of ... or right to possession of the place where the controlled substance was found; 2) the defendant's sole access to the [place where the controlled substance was found]; 3) defendant under the influence of narcotics when arrested; 4) defendant's presence when the search warrant executed; 5) the defendant's sole occupancy of the [place where the controlled substance was found] at the time the contraband is discovered; 6) the location of the contraband ...; 7) contraband in plain view; 8) defendant's proximity to and the accessibility of the narcotic; 9) defendant's possession of other contraband when arrested; 10) defendant's incriminating statements when arrested; 11) defendant's attempted flight; 12) defendant's furtive gestures; 13) presence of odor of the contraband; 14) presence of other contraband or drug paraphernalia, not included in the charge; 15) place drugs found was enclosed.
Wallace v. State, 932 S.W.2d 519, 524 n. 1 (Tex.App.1995). Other factors that have been deemed relevant include "the consistent presence of known narcotics users on the premises[,]" State v. Brown, 80 N.J. 587, 404 A.2d 1111, 1119 (1979); the large quantity of drugs found, id.; the presence of large sums of money, State v. Steward, 844 S.W.2d 31, 33, 35 (Mo.App.1992); the fact that the defendant had previously sold drugs, Dodson v. State, 213 Md. 13, 130 A.2d 728 (1957), or used drugs, State v. Harris, 159 Conn. 521, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S.Ct. 578, 27 L.Ed.2d 630; and the fact that the drugs were found among the defendant's personal belongings. State v. Baxter, 285 N.C. 735, 208 S.E.2d 696 (1974).
92 Hawaii at 476, 992 P.2d at 745.
Viewing the evidence in the light most favorable to the State, Westbrook was alone in Room 3 when police officers entered it while executing a search warrant on November 22, 2005.[4] Three pipes, a scale, a pouch with Q-tips inside, and ziploc bags were present at various locations in the room itself, the closet, and the adjoining bathroom. Specifically, one of the pipes, the pouch with Q-tips, and a ziploc bag with "some residue" inside was found inside a black bag on the floor of the room near the bed; the scale and another pipe was found inside the hood of a woman's sweatshirt in the closet; a third pipe was found inside a case for glasses in the medicine cabinet in the bathroom; a ziploc bag was found in a drawer in the bathroom sink; approximately 69 empty ziploc bags and a ziploc bag with "crystals" inside were found in a drawer in the dresser of the room; and a ziploc bag with "residue" inside was found on a shelf above the bed.[5] One of the officers who conducted the search testified that the pipes and the scale were not in plain view, and the ziploc bags were not visible "from the perspective of the bed." The State acknowledged in closing argument that "[a]ll of the evidence found is this case were [sic] hidden from plain view."
The only items recovered from the room that had Westbrook's name on them were "medical papers" found in a woman's purse that was located on the floor of the room. There were no drugs or items of paraphernalia in that purse.
Westbrook testified that he and his girlfriend had been staying at the residence at 1746 Kamehameha IV Road for about three weeks prior to the search. Initially, they stayed in the upstairs and the downstairs living rooms, although a couple who was occupying Room 3 allowed them to use the room when the couple was not there. According to Westbrook, that couple left on November 7th. The couple left clothing behind in Room 3 and said they would return to get it, but did not do so. The landlady then allowed Westbrook and his girlfriend to stay in Room 3 so Westbrook could recover from an accident that he suffered on November 9th. Westbrook denied that any of the drug paraphernalia or methamphetamine was his and denied having any knowledge of its existence.
In summary, the drug paraphernalia and methamphetamine were not in plain view, and the containers in which they were located did not contain evidence sufficient to establish that Westbrook had exercised dominion or control over the contents of those containers. There is no evidence that Westbrook was using drugs immediately prior to the search, or that anyone had used the drug paraphernalia immediately prior to the search, or that Westbrook engaged in behavior at the time of the search which reflected consciousness of guilt. There were four other bedrooms and a living room on the ground floor, and a total of about 15 people were found in those various rooms and could have had access to Room 3.[6] The only items found in Room 3 that were specifically traceable to Westbrook the "medical papers"  were found inside a woman's purse. The scales and one of the pipes were found inside a woman's sweatshirt. Finally, the substances that contained methamphetamine weighed a total of only .055 grams, which was not such a large amount as to be inconsistent with the possibility, as suggested by Westbrook's testimony, that they were left behind by the prior occupants.
On these facts, there was insufficient evidence to support the jury's verdict that Westbrook knowingly possessed the methamphetamine, or that he knowingly possessed the paraphernalia in Room 3 with the intent to use it for any of the purposes articulated in HRS § 329-43.5(a)(1993).[7]
Accordingly, we reverse the Judgment of Conviction and Sentence filed on April 25, 2007 in the Circuit Court of the First Circuit.
NOTES
[1] The Honorable Dexter D. Del Rosario presided.
[2] Although Westbrook did not move at the end of all the evidence for a judgment of acquittal under HRPP 29(a), we may nevertheless review the sufficiency of the evidence adduced at trial. State v. Rodrigues, 6 Haw. App. 580, 733 P.2d 1222 (1987); State v. Mitsuda, 86 Hawai`i 37, 38 n.3, 947 P.2d 349, 350 n.3 (1997).
[3] The State argued in closing that the rental receipt was "evidence that that was his room" and that "[hie was renting that room."
[4] A police SWAT team entered the residence initially to secure it, but no one from that team testified at trial. Other officers who entered the residence after the SWAT team did testify at trial, and said that they observed Westbrook sitting on the bed in Room 3. Westbrook testified that he was sleeping in Room 3 when police entered.
[5] The three pipes and one of the ziploc bags (it is unclear from the record which one) recovered from the room tested positive for methamphetamine; three ziploc bags tested negative.
[6] Westbrook testified that he did not have a key to Room 3, and that the door was open when police arrived. As noted above, the SWAT officers who initially entered the residence did not testify at trial, although another officer who subsequently entered the residence testified that there was damage to the "door jam" of Room 3 and the other bedrooms.
[7] In view of this disposition, we do not reach Westbrook's remaining points of error.